THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GEORGE DUNCAN, Defendant-Appellee.

Third District   No. 3—87—0792

Opinion filed August 17, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Nathan P. Maddox, Terence Madsen, and Douglas K. Smith, Assistant Attorneys General, of counsel), for the People.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, George Duncan was tried for the beating death of Yvette Searle in 1980. The jury returned a verdict of guilty of murder on May 30, 1980. The conviction was affirmed on appeal. (*People v. Duncan* (1981), 97 Ill. App. 3d 896, 424 N.E.2d 67.) At his trial, the defendant testified in his own defense.

On October 1, 1985, the defendant was granted *habeas corpus* relief by the United States District Court for the Central District of Illinois. (*United States ex rel. Duncan v. O'Leary* (C.D. Ill. Oct. 1, 1985), No. 84—2368, *aff'd* (7th Cir. 1986), 806 F.2d 1307.) The Federal court ruled that the first trial was tainted by a conflict of interest which the defendant had not adequately waived. The court ordered that the defendant be retried for the offense. *United States ex rel. Duncan v. O'Leary* (C.D. Ill. Oct. 1, 1985), No. 84—2368, *aff'd* (7th Cir. 1986), 806 F.2d 1307.

On retrial, the defendant filed a pretrial motion to suppress evidence. The motion was granted in part. The prosecution filed a motion *in limine* for a ruling on the admissibility of the defendant's testimony from his first trial. The court ruled that the testimony could not be used except for impeachment purposes. The prosecution requests that this court review the trial court's order *in limine* as to the defendant's prior testimony.

On February 19, 1980, the defendant went to his brother Chris' home and asked if someone could be unconscious from 6 a.m. until approximately 2:30 p.m. that same day. Chris, an officer with the Peoria police department, indicated that he did not believe so. The defendant then asked his brother to accompany him to his apartment to look at the body of his girlfriend, Yvette Searle. Chris Duncan then called the police department and advised them he would be late because of family problems. Upon arriving at the apartment, the defendant unlocked and opened the door and let his brother in. Chris Duncan observed the body of Yvette Searle on the bed, partly covered with a blanket. He checked for a pulse and found none. Chris then pulled back the blanket and observed bruises on the victim's body and face. He told

the defendant he thought Yvette was dead.

Chris Duncan looked around the apartment and commented that the apartment was a mess. As the defendant began to straighten up the apartment, Chris told him to stop because the room was a crime scene and the lab was going to have to take pictures of the room.

On the advice of his brother, the defendant then drove with his brother to the police station. At the station, the defendant was turned over to Lieutenant Stenson. The defendant was directed to an interview room. Lieutenant Stenson called other officers into his office to discuss returning to the crime scene. On the advice of James Murphy, the police legal advisor, Murphy, Chris Duncan and a number of other officers returned to the defendant's apartment at about 3:30 p.m. A number of items that were in the officers' plain view were collected. Murphy advised against collecting any other items that were not in the parties' plain view without a search warrant.

A search warrant was obtained at 10 p.m. on the same day. However, nothing was seized with this warrant due to inadequate lighting in the defendant's apartment. A second warrant was obtained the following day, at which time a complete search was conducted.

On November 9, 1987, the trial court granted in part the defendant's motion to suppress all the items seized at the apartment during the second entry of Chris Duncan and the other police officers. The court made an exception to this ruling however, holding that the body itself and any photographs taken were admissible. The court also ruled on the the State's motion *in limine* to determine the admissibility of the defendant's testimony at his first trial. The court ruled the testimony could not be used except for impeachment purposes.

■■ Initially, the people argue that the trial court was in error in holding that the evidence obtained during the second entry into the defendant's apartment was inadmissible. The State's initial justification for the warrantless seizure is that the items seized were in plain view. This theory was argued before and rejected by the trial court. The trial court noted correctly that in order for the plain view exception to the warrant requirement to operate, the officers must lawfully be on the premises. In the present case the police were not legally upon the defendant's property. Although it is correct that Chris Duncan, the defendant's brother and a Peoria police officer, was invited to the defendant's home and did view the crime scene, it would be a manipulation of the facts to find that he consented to the Peoria police department's second entry.

However, simply because the plain view exception is not applicable does not mean that the evidence seized should be suppressed. The

Supreme Court case, *Nix v. Williams* (1984), 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501, is controlling. In *Nix*, evidence became available to the police after the defendant had directed the officers to the victim's body. The defendant directed the officers to the body after a police officer's appeal to locate the body so that it might be given a Christian burial. The officer's appeal was made during a conversation with the defendant in the absence of counsel and despite an agreement with counsel that the petitioner would not be questioned.

The evidence sought to be admitted was the condition of the body as it was found, articles and photographs of the victim's clothing, and the results of postmortem medical and chemical tests performed upon the body.

The Supreme Court held the evidence pertaining to the discovery and condition of the victim's body was properly admitted at the respondent's second trial on the ground that it would have inevitably been discovered even if no violation of any constitutional provision had taken place. *Nix v. Williams* (1984), 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501.

■■ ■ In the present case the items seized in the police's initial entry into the apartment clearly would have been discovered upon the police obtaining a search warrant. At the suppression hearing the trial court ruled that the body and photographs of the body would be admissible. However, the court held that the other items seized should be excluded. We fail to see the rationale in the court's ruling. The items seized were in plain view in the room and around the body. In *Nix*, the Supreme Court stated that the rationale for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct is that such course is needed to deter police from violations of constitutional and statutory protections notwithstanding the high cost of letting obviously guilty persons go unpunished. *Nix v. Williams* (1984), 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501.

The record indicates that the items were in plain view and around the victim's body in the defendant's apartment. In addition it is clear that the police would have inevitably discovered the evidence by lawful means, here the obtaining of a search warrant at 10 p.m. the same day. Consequently the evidence collected by the police department in its initial entry into the defendant's apartment may be admitted at the defendant's trial.

The second ruling made by the trial court is that the defendant's testimony, given at his first trial, could be used in his second trial for impeachment purposes only. The State argues that the defendant's testimony at his first trial is admissible at his second trial in the pros-

ecution's case in chief. The defendant contends the testimony is inadmissible for any purpose. We agree with the trial court's ruling.

■■ As the State correctly points out, the general rule regarding a defendant's earlier trial testimony is that it is admissible against him at a later trial. (*Harrison v. United States* (1968), 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008.) In permitting testimony from the first trial to be used in the subsequent trial it is assumed the defendant voluntarily availed himself of his right to testify at his first trial. *People v. Moore* (1974), 19 Ill. App. 3d 334, 311 N.E.2d 401.

■■ In the instant case, the defendant's retrial resulted from the granting of a *habeas* petition in Federal district court which was later affirmed by the Seventh Circuit Court of Appeals. (*United States ex rel. Duncan v. O'Leary* (7th Cir. 1986), 806 F.2d 1307.) The district court found, and the reviewing court affirmed, that the defendant had received ineffective assistance of counsel because his trial attorney labored under a conflict of interest. In addition, there was evidence of active collusion on the part of the assistant State's Attorney and the defense attorney.

The Supreme Court in *Harrison* stated that in examining cases of this sort, the question to be determined is not whether a party made a knowing decision to testify but why he chose to testify. (*Harrison v. United States* (1968), 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008.) In this case the defendant was denied the effective assistance of counsel, which colored the entire proceeding. Justice suggests that the defendant's statements were not made with any degree of particular advice. Consequently, the principles set forth in *Harrison* are applicable and the defendant's testimony may be used for impeachment purposes only.

For the foregoing reasons the judgment of the circuit court of Peoria County is reversed in part, affirmed in part, and remanded with directions to proceed with the views expressed within this opinion.

Affirmed in part; reversed in part and remanded.

SCOTT and BARRY, JJ., concur.