[641 NYS2d 910]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN SPENCER, Appellant.

Third Department, May 2, 1996

### APPEARANCES OF COUNSEL

*Terence L. Kindlon,* Albany, for appellant.

*Dennis C. Vacco, Attorney-General,* New York City *(Christine Duisin* of counsel), for respondent.

### OPINION OF THE COURT

YESAWICH JR., J.

Defendant was originally convicted of murder, robbery and criminal possession of a weapon as a result of his participation, along with accomplices Charles "Bud" Shepherd and Richard Wolf, in the slaying of two people in Delaware County on December 10, 1986 (*see, People v Spencer,* 157 AD2d 906, *lv denied* 75 NY2d 925). That conviction was overturned after an investigation of illegal police activity revealed that it had been procured by the use of perjured testimony and falsified evidence. During the course of that investigation, it was discovered that an evidentiary linchpin placing defendant at the scene of the crime—a fingerprint he had allegedly left on a countertop—had been fabricated by former State Police Investigator

Craig Harvey, who was later convicted of evidence tampering and perjury.

Defendant was thereafter reindicted and a second trial was had, in connection with which the Attorney-General superseded the District Attorney as prosecutor, after the latter requested assistance. A motion by defendant to disqualify the Attorney-General's office, on the ground that its ongoing participation in the investigation and prosecution of State Police evidence-tampering charges created an unacceptable conflict of interest, was, quite rightly, denied. During the prosecution's direct case, defendant's testimony from his first trial was read into the record, and when Shepherd refused to testify, despite being threatened with contempt if he failed to do so, his prior testimony was also received in evidence.

Convicted of four counts of murder in the second degree, two counts of robbery in the first degree and one count of robbery in the second degree, and sentenced to an aggregate term of imprisonment of 50 years to life, defendant appeals.

■ Although Supreme Court erred in allowing defendant's earlier testimony to be read to the jury, this does not warrant a reversal of the judgment of conviction for the error was harmless beyond a reasonable doubt. Prefatorily, we note that although defendant's objection to the introduction of this testimony was somewhat obscurely worded, it is apparent from Supreme Court's response that it understood that the objection was founded on the premise that defendant's decision to take the stand at the first trial had been prompted by Harvey's fraudulent testimony. It is further apparent that the People were afforded ample opportunity to controvert that contention.

There is force to defendant's argument that when a criminal defendant testifies at a trial which is later found to have been contaminated by the introduction of illegally obtained evidence, that earlier testimony cannot be admitted in a later trial as part of the People's case-in-chief unless the prosecutor can demonstrate that the defendant was not impelled to testify as he did because of the impact of the improperly received evidence (*see, Harrison v United States,* 392 US 219, 223-225; *People v Levan,* 62 NY2d 139, 145-146; *People v Robinson,* 172 AD2d 1006, *lv denied* 78 NY2d 973). The People's submission that this principle has no application in the case at hand, because Harvey's testimony was not illegally acquired in the same way as is the "fruit" of an improper search, but was only perjurious, is specious for, if anything, the source of this evidence—deliberately manufactured by police authority—is even

more "poisonous" than that which is the product of an unfounded police search or seizure. The " 'imperative of judicial integrity' " mandates the exclusion of any evidence obtained as a direct or indirect result of police perjury and studied deceit (*Harrison v United States, supra*, at 224, n 10). Inasmuch as the People did not meet their burden of proving that defendant's decision to testify at his first trial was not brought about by the need to overcome the effects of Harvey's wrongdoing, the admission of that testimony in the second trial was improper.

Having so concluded, we must still determine whether this error was so grave as to require reversal. Defendant maintains that it was, namely, that admission of his earlier testimony cannot be considered harmless since it provided necessary corroboration of Shepherd's testimony, which was the only evidence placing defendant at the crime scene and linking him to the actual murders and robbery. We are unpersuaded. To the extent that defendant's testimony—which, for the most part, provided an exculpatory explanation for his presence in Delaware County on the night of the murders, a circumstance that was essentially undisputed and undeniably damaging— confirmed some minor details of Shepherd's account, it added nothing of any substance to the ample corroboration provided by other disinterested witnesses, whose testimony established the same facts, as well as others far more detrimental.

Two bar patrons testified that they observed Wolf make telephone calls from the Rustic Inn, where Shepherd claimed the three had attempted to contact one of the victims; a store clerk confirmed that defendant made purchases at a supermarket at which Shepherd said the trio had stopped; and defendant's estranged wife and girlfriend testified about defendant's arguably suspicious activities after he returned from New York, and his possession of handcuffs (one of the victims had been handcuffed), as well as a suitcase and a large quantity of silver coins that Shepherd stated had come from the victims' house. Physical evidence, including several items recovered from a river passing beneath the bridge where the perpetrators had reportedly stopped, duct tape (corresponding to that used to bind the victims) recovered from an envelope in defendant's truck, and a boot print (matching a pair of defendant's boots) that was discovered on a plexiglass panel in the victims' door, also provided corroboration for much of Shepherd's story.

To this daunting corroborative evidence—which is patently sufficient to meet the statutory requirement (*see, People v*

*Glasper*, 52 NY2d 970, 971-972)—defendant's account added nothing that could be perceived as damaging to his defense. Significantly, the testimony in question did not incorporate any admission that defendant had been inside the victims' house, or that he had actually participated in the commission of the crimes charged (*compare*, *Harrison v United States*, *supra*, at 225; *People v Levan*, *supra*, at 145). To the contrary, those aspects of defendant's testimony that were not simply duplicative of other evidence were wholly exonerative. There is no reasonable possibility that the introduction of this essentially exculpatory evidence contributed to defendant's conviction (*see*, *People v Almestica*, 42 NY2d 222, 226; *People v Robinson*, *supra*; *cf.*, *People v Clark*, 185 AD2d 988, 989, *lv denied* 81 NY2d 969).

■ A few of defendant's remaining charges of error require comment. Although Supreme Court's initial reason for allowing the People to introduce Shepherd's testimony from the first trial—that he was unavailable by virtue of the fact that he invoked his 5th Amendment privilege against self-incrimination—was later appropriately determined to be unfounded, that testimony was nevertheless properly admitted given Shepherd's steadfast refusal to testify, even under threat of being held in contempt, after he was recalled to the stand and confronted with the fact that he had been granted immunity at his plea allocution (*see*, *People v Muccia*, 139 AD2d 838, 839). And as for the suggestion that the cross-examination of Shepherd by defendant's prior counsel at the earlier trial was, in the view of present counsel, less than stellar, that is immaterial as it is the existence of a "fair opportunity" to cross-examine, under circumstances calculated to induce relevant inquiry into the issues involved, that is crucial (*People v Arroyo*, 54 NY2d 567, 574, *cert denied* 456 US 979). Both the opportunity and motive to engage in a thorough cross-examination were undeniably present in the first trial.

■ Nor need a new trial be had because of the prosecutor's failure to turn over, in a timely fashion, three items of *Rosario* material (*see*, *People v Rosario*, 9 NY2d 286, *cert denied* 368 US 866): the minutes of Shepherd's plea allocution; sworn statements given to a special prosecutor by several of the People's witnesses in connection with the ongoing investigation of State Police evidence tampering; and the transcript of a suppression hearing held in Shepherd's case, at which he and two of the People's police witnesses testified. All of these items were eventually turned over, at some point during the People's case,

and defendant has failed to demonstrate that he has been disserved by the late delivery of any of them (*see, People v Ranghelle*, 69 NY2d 56, 63).

In view of Shepherd's continuous refusal to answer the substantive questions posed by either the prosecution or the defense, defendant cannot be said to have been inhibited in his cross-examination of Shepherd by the late receipt of the plea minutes. Equally meritless is defendant's assertion that because those minutes were unavailable to him when Shepherd was first called to the stand, the defense was unable to effectively argue that Shepherd could not properly invoke his 5th Amendment privilege, resulting in the admission of Shepherd's testimony from the first trial. It is enough to note, in this regard, that even after defendant was able to successfully press this argument, Shepherd's inflexible and contumacious refusal to testify presented an alternative basis for the introduction of his earlier testimony.

As for the sworn statements from the evidence-tampering investigation, which were timely turned over but with certain portions redacted, defendant's objection to Supreme Court's failure to review the statements unredacted was not denied, but just deferred by the court until such time as the witnesses actually testified. Having failed to again seek review at that juncture, defendant must be deemed to have abandoned this objection (*see, People v Graves*, 85 NY2d 1024, 1027). In any event, defendant did not articulate a factual basis for his supposition that pertinent sections of the interviews had been withheld, such that in camera review by the court would have been advisable (*see, People v Poole*, 48 NY2d 144, 149).

Turning to the suppression hearing transcript, even accepting defendant's representation that it was delivered for the first time after the participating police officers had testified and Shepherd's testimony had been received, defendant has not shown that Supreme Court's offer to allow these witnesses to be recalled was insufficient to alleviate any prejudice occasioned by the late disclosure (*see, People v Robertson*, 192 AD2d 682, *lv denied* 81 NY2d 1079).

The rest of defendant's contentions have been considered and found unconvincing.

MIKOLL, J. P., MERCURE, CREW III and SPAIN, JJ., concur.

Ordered that the judgment is affirmed.