Stevie L. **PATTON**, Appellant,

v.

**UNITED STATES, Appellee.**

No. 94–CF–1661.

District of Columbia Court of Appeals.

Argued Dec. 6, 1996.
Decided Jan. 23, 1997.

---

Cynthia Jones, Public Defender Service, Washington, DC, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Barbara J. Valliere, Assistant United States Attorney, Washington, DC, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and June M. Jeffries, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, SCHWELB, and REID, Associate Judges.

SCHWELB, Associate Judge:

In March, 1991, Stevie L. Patton was convicted by a jury of two counts of first-degree murder while armed. *See* D.C.Code §§ 22–2401, –3202 (1996). On November 22, 1993, this court reversed his convictions, holding that the trial judge had erred by admitting into evidence police testimony regarding certain hearsay statements which Patton's mother had made to police officers. *Patton v. United States,* 633 A.2d 800 (D.C.1993) (per curiam) (*Patton I*). Patton was retried and, on September 21, 1994, he was convicted of two counts of second degree murder while armed.

Patton took the stand in his own defense at the first trial, but he did not testify at the second. Over defense objection, the prosecution introduced into evidence, during its case-in-chief, Patton's first trial testimony. Relying almost entirely on *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) (*Harrison IV*), Patton contends on appeal that he was "compelled" to testify at the first trial by the prosecution's introduction, over objection, of inadmissible hearsay evidence, and that the judge presiding over the second trial therefore erred in admitting Patton's first trial testimony. We affirm.

## I.

The facts from which this prosecution arose are described in detail in *Patton I,* and we do not restate them here. The present appeal turns on the applicability to the record before us of the Supreme Court's decision in *Harrison IV.* Accordingly, we discuss the lengthy and rather colorful history of that case in some detail.

On April 19, 1960, Eddie M. Harrison and several confederates were charged by indictment with first-degree murder in connection with the shotgun death of George R. Brown during the course of an attempted robbery. At their first trial, two of Harrison's codefendants were "represented" by one Daniel Jackson Oliver Wendell Holmes Morgan. The defendants were convicted and sentenced to death. Shortly after the trial, Harrison's attorney died, and Morgan took over the representation of Harrison as well.

While the convictions were on appeal, it was disclosed that Morgan, notwithstanding his illustrious third, fourth and fifth names, was not an attorney at all. Rather, he was an ex-convict with delusions of grandeur and a somewhat original "hustle." Morgan had falsely assumed the name of an absentee attorney, and he had held himself out as an attorney while "representing" criminal defendants for a period of fourteen months. Morgan's "clients" included two of Harrison's codefendants and, briefly, Harrison himself. Morgan was subsequently convicted of forgery, perjury, and other offenses, and his

convictions were affirmed by the United States Court of Appeals. *See Morgan v. United States,* 114 U.S.App. D.C. 13, 309 F.2d 234 (1962) (Bazelon, J.).

Upon learning of the "Morgan masquerade," *see Harrison v. United States,* 123 U.S.App. D.C. 230, 233, 359 F.2d 214, 217 (1965) (per curiam) (*Harrison I*), modified en banc, 123 U.S.App.D.C. at 239, 359 F.2d at 223 (1965) (*Harrison II*), the United States Court of Appeals set aside the convictions of Harrison and his codefendants, concluding that there "was a manifest necessity for our action lest the ends of public justice be defeated." *Harrison I,* 123 U.S.App.D.C. at 233, 359 F.2d at 217. Rejecting defense claims of double jeopardy, the court ordered a new trial.

The second trial of Harrison and his codefendants took place in May 1963. At that trial, over defense objection, the prosecution introduced into evidence against Harrison three confessions which he had made while in custody. Although Harrison's attorney had represented in his opening statement that Harrison would not testify, Harrison did in fact take the stand, and he related a version of the events in question different from the account provided in his confessions. Harrison and his codefendants were again convicted.

Harrison again appealed and, on December 7, 1965, in *Harrison I,* the United States Court of Appeals reversed his convictions, holding that two of his confessions had been unlawfully obtained in violation of *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957),[1] and that the third had been secured in contravention of *Harling v. United States,* 111 U.S.App.D.C. 174, 295 F.2d 161 (1961).[2] In *Harrison II,* the full court, sitting en banc, modified the holding in *Harrison I* in respects which are not signifi-

cant here. The court remanded the case once again for a new trial. 123 U.S.App. D.C. at 239–45, 359 F.2d at 223–29.

At the third trial, which was held in May 1966, the prosecution did not attempt to introduce into evidence any of Harrison's unlawfully obtained confessions. The government did, however, offer Harrison's testimony at the second trial. The defense objected, claiming that Harrison had been induced to testify solely as a result of the introduction against him of evidence that had been unlawfully obtained. The trial judge, however, admitted the evidence over objection. Harrison was again convicted, and he again appealed. On May 18, 1967, the Court of Appeals affirmed Harrison's conviction, holding that Harrison's testimony was not involuntary because he had made a "conscious tactical decision to seek acquittal by taking the stand after [his] in-custody statements." *Harrison v. United States,* 128 U.S.App. D.C. 245, 252, 387 F.2d 203, 210 (1967) (*Harrison III*).

Harrison filed a petition for a writ of certiorari and, on December 4, 1967, the Supreme Court granted the petition. The Court did so in order "to decide whether the petitioner's trial testimony was the inadmissible fruit of the illegally procured confessions." *Harrison IV,* 392 U.S. at 221, 88 S.Ct. at 2009. On June 10, 1968, more than eight years after the death of George R. Brown, the Supreme Court reversed Harrison's third conviction. The substance of the Court's analysis is contained in the following passage from the majority opinion:

> In this case we need not and do not question the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings.[3] A defendant who chooses

---

**1.** In *Mallory,* the Supreme Court held, in substance, that statements taken from a defendant in custody, during a period of unnecessary delay prior to the defendant's initial appearance before a judicial officer, must be excluded from evidence. *Mallory,* 354 U.S. at 453–54, 77 S.Ct. at 1358–59.

**2.** In *Harling,* the court held, as a prophylactic measure, that a minor's statement while under the exclusive jurisdiction of the juvenile court

would not be admissible against him if he was subsequently prosecuted as an adult on the same charges. *Harling,* 111 U.S.App. D.C. at 176, 295 F.2d at 163.

**3.** In a footnote, the Court cited, *inter alia, Edmonds v. United States,* 106 U.S.App. D.C. 373, 377–78, 273 F.2d 108, 112–113 (1959) (en banc). *Harrison IV,* 392 U.S. at 222 n. 5, 88 S.Ct. at 2010 n. 5.

to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him.

Here, however, the petitioner testified only after the Government had illegally introduced into evidence three confessions, all wrongfully obtained, and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree, to invoke a time-worn metaphor. For the "essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319.

*Harrison IV, supra,* 392 U.S. at 222, 88 S.Ct. at 2010 (footnotes omitted). Justices Black, Harlan and White dissented. *Id.* at 226, 226–27, 228–35, 88 S.Ct. at 2012, 2012–13, 2013–17.

## II.

In *Edmonds, supra* note 3, the court stated the applicable law as follows:

It is generally held, unless a statute directs otherwise, that a defendant in a criminal case who takes the stand in his own behalf and testifies without asserting his privilege against self-incrimination thereby waives the privilege as to the testimony given so that it may be used against him in a subsequent trial of the same case. The fact that the defendant does not take the stand at the second trial does not prevent the use of his testimony given at the former trial, if it would otherwise be admissible.

106 U.S.App. D.C. at 377–78, 273 F.2d at 112–13. In *Harrison IV,* the Supreme Court, citing the *Edmonds* decision by name, declined to question this "general evidentiary

rule." 392 U.S. at 222, 88 S.Ct. at 2010. Having agreed to review the decision in *Harrison III* in order to determine whether Harrison's testimony at the third trial "was the inadmissible fruit of the illegally procured confession," *id.* at 221, 88 S.Ct. at 2009, the Court proceeded to fashion a single narrow exception to the general rule; where as in *Harrison IV,* the defendant's testimony was "impelled" by the introduction into evidence of confessions that had been "wrongfully obtained," and hence inadmissible, that testimony must be suppressed as "the fruit of the poisonous tree." *Id.* at 222, 88 S.Ct. at 2010.

Patton does not contend, nor can he, that the testimony which he gave at his first trial was impelled by the introduction of unlawfully procured evidence. Rather, he claims to have decided to testify at his first trial as a result of the erroneous admission by the judge of hearsay evidence. The principle which the Court sought to vindicate in *Harrison IV*—namely, that where the government obtains evidence unlawfully, it shall not be permitted to avail itself of the fruits of that evidence—has no application to the present situation. We know of no case in which a court has excluded, under the doctrine of *Harrison IV,* testimony said to have been induced by an incorrect evidentiary ruling.

In *United States v. Bohle,* 475 F.2d 872 (2d Cir.1973), the defendant's original conviction for hijacking was reversed in part because certain psychiatric testimony had been erroneously admitted against him. Like Patton, Bohle testified at his first trial but not at his second. On appeal from his second conviction, he contended, in reliance on *Harrison IV,* that his first trial testimony should have been excluded at the second trial. The court rejected this contention because

*Harrison* involved defendant testimony "impelled" by introduction of illegal confessions and thus inadmissible as "fruit of the poisonous tree." We see no reason to extend the "fruits" doctrine to testimony "impelled" by mere evidentiary hearsay error, as distinct from unconstitutional [4] police practices.

---

4. Patton points out, correctly, that the confessions in *Harrison* were not *unconstitutionally* obtained, and he argues that *Bohle* was therefore

incorrectly decided. We agree that the use of the word "unconstitutional" in the *Bohle* opinion was inaccurate. If, however, the word "unlaw-

*Id.* at 875–76; *see also State v. Hunt*, 339 N.C. 622, 457 S.E.2d 276, 285 (1994) ("[e]ven if defendant's testimony at his first trial was induced by evidence which was inadmissible under the rules of evidence, and not because it was unconstitutionally[5] obtained, the *Harrison* exception to the general rule permitting the testimony to be offered at the second trial would not apply"); *Towe v. State*, 304 Ark. 239, 801 S.W.2d 42, 43 (1990) ("*Harrison* is inapplicable to routine evidentiary rulings").

Patton relies on *Murphy v. United States*, 572 A.2d 435 (D.C.1990), but that decision provides him with no solace. The question in *Murphy* was whether "other crimes" evidence was properly admitted as a part of the prosecution's case-in-chief where the defendant had not yet placed his intent at issue. The court held, with the writer of this opinion dissenting, that the trial judge erred in receiving the evidence, but the majority went on to hold that the error was harmless. En route to its decision, the court stated:

> The record makes clear that Murphy would not have taken the stand but for the erroneous admission of the Drew[6] evidence. [Citing *Harrison IV*].

572 A.2d at 438–39.

The court's incidental allusion in *Murphy* to *Harrison IV* came up in a discussion as to whether the defendant would or would not have testified in fact. The issue in *Murphy* was whether "other crimes" evidence was properly admitted, and not whether the improper admission of such evidence would render Murphy's responsive testimony involuntary and inadmissible at a subsequent trial. The question whether the rule of *Harrison IV* applies to a situation in which a defendant claims to have taken the stand in response to erroneously admitted evidence was not before the court. Accordingly, *Murphy* cannot reasonably be viewed as having decided the issue presented in this case. *See District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C.1996).

*Affirmed.*[7]

---

ful" is substituted for "unconstitutional," then in our view the analysis in *Bohle* is unassailable.

5. The court in *Hunt*, like the court in *Bohle*, made a sound point with imprecise terminology.

6. *See Drew v. United States*, 118 U.S.App. D.C. 11, 331 F.2d 85 (1964).

7. According to the government, the record in this case establishes beyond doubt that Patton would have taken the stand at the first trial even if the hearsay testimony had not been admitted. The government points in particular to defense counsel's opening statement, which contained a number of representations about Patton's state of mind, his use of narcotics, and his dealings with one Jesus, the man alleged by defense counsel to have been Patton's drug supplier and the actual murderer.

The government's point is a plausible one, for it would not have been easy to prove these representations without Patton's testimony. A defense attorney's opening statement must remain "within the bounds of propriety and good faith." *Hampton v. United States*, 269 A.2d 441, 442 (D.C.1970) (quoting *Hallinan v. United States*, 182 F.2d 880, 885 (9th Cir.1950), *cert denied*, 341 U.S. 952, 71 S.Ct. 1010, 95 L.Ed. 1375 (1951)). "It is unprofessional conduct to allude to any evidence unless there is a good faith and reasonable basis for believing [that] such evidence will be tendered and admitted at trial." AMERICAN BAR ASSOCIATION STANDARDS FOR CRIMINAL JUSTICE, *The Defense Function*, Standard 4–7.4 (2d ed.1980).

The trial judge did not, however, conduct a hearing as to when and why Patton decided to testify. This court is not equipped to resolve this essentially factual issue without a remand for additional trial court findings. Given our disposition of the case on other grounds, such a remand would serve no useful purpose.