No. 98-683

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 266

STATE OF MONTANA, ex rel. JOSEPH P. MAZUREK,

Attorney General for the State of Montana,

Relator,

v.

DISTRICT COURT OF THE TWENTIETH JUDICIAL

DISTRICT, in and for the County of Lake and

the Honorable Robert S. Keller, District Judge,

Respondents.

ORIGINAL PROCEEDING: Application for Writ of Supervisory Control

COUNSEL OF RECORD:

For Relator:

Hon. Joseph P. Mazurek, Montana Attorney General;

Patricia J. Jordon, Elizabeth Horsman (argued), Assistant

Attorneys General, Helena, Montana

For Respondent:

James A. Manley (argued), Attorney at Law, Polson, Montana

Argued and Submitted: November 2, 1999

Decided: October 2, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 This case originated in this Court on the application of the State of Montana (State) for a writ of supervisory control seeking relief from the order of the Twentieth Judicial District Court, Lake County, granting a motion *in limine* filed by Gregory Lloyd Ingraham (Ingraham). Having accepted supervisory control and heard oral arguments, we reverse the District Court's order and remand.

¶2 The issue before us is whether the District Court abused its discretion in granting Ingraham's motion *in limine* and precluding the State from using Ingraham's testimony from the first trial in the underlying case during its case-in-chief at the second trial.

## BACKGROUND

¶3 Ingraham was involved in a two-vehicle accident on Highway 93 north of St. Ignatius, Montana, in October of 1995. The driver of the other vehicle was killed in the collision and a passenger was severely injured. Ingraham subsequently was charged with the offenses of negligent homicide and criminal endangerment, both felonies, as well as misdemeanor criminal trespass to property. Ingraham pleaded not guilty to all counts and the case proceeded to jury trial.

¶4 At trial, the State introduced into evidence two prescription medication bottles found in Ingraham's vehicle on the night of the accident and test results showing that prescription medications and alcohol were present in Ingraham's blood and urine on that night. The State also presented expert testimony regarding the effects of the medications on a person's physical abilities and the medical warnings regarding the interaction of the drugs with each other and with alcohol. Ingraham testified in his own defense. The jury returned a verdict finding Ingraham guilty of the three charged offenses. The District Court sentenced Ingraham and entered judgment.

¶5 Ingraham timely appealed and we vacated the District Court's judgment and remanded for a new trial. Among other things, we held that it was prejudicial error to admit the evidence and testimony regarding the prescription drugs because the State failed to establish a nexus between the presence of the drugs in Ingraham's blood and urine and his ability to drive a vehicle on the night of the accident. State v. Ingraham, 1998 MT 156, ¶¶ 37-51, 290 Mont. 18, ¶¶ 37-51, 966 P.2d 103, ¶¶ 37-51.

¶6 On remand, Ingraham moved *in limine* to preclude the State from using his testimony from the first trial during its case-in-chief at the second trial. He based his motion on § 46-16-701, MCA, and his right not to be compelled to testify against himself as guaranteed by the United States and Montana Constitutions. The District Court granted the motion and the State petitioned for supervisory control. We accepted jurisdiction and remanded to the District Court for a hearing regarding Ingraham's reasons for testifying in the first trial and the entry of findings of fact, conclusions of law and an order setting forth the District Court's reasoning in granting the motion *in limine*. Following the District Court's entry of its written order, the parties submitted supplemental briefs to this Court and we heard oral arguments.

## STANDARD OF REVIEW

¶7 A district court's ruling on a motion *in limine* is an evidentiary ruling which we review for an abuse of discretion. State v. Delaney, 1999 MT 317, ¶ 6, 297 Mont. 263, ¶ 6, 991 P.2d 461, ¶ 6. Here, the District Court granted Ingraham's motion based on its interpretation of statutory and constitutional provisions. A district court's interpretation of a statute involves a question of law which we review to determine whether the court's interpretation of the law is correct. State v. Brummer, 1998 MT 11, ¶ 31, 287 Mont. 168, ¶ 31, 953 P.2d 250, ¶ 31. Our review of questions of constitutional law is plenary. State v. Grimes, 1999 MT 145, ¶ 19, 295 Mont. 22, ¶ 19, 982 P.2d 1037, ¶ 19.

## DISCUSSION

¶8 Did the District Court abuse its discretion in granting Ingraham's motion *in limine* and precluding the State from using Ingraham's testimony in the first trial during its case-in-chief at the second trial?

¶ 9 In his motion *in limine*, Ingraham contended that his testimony from the first trial is not admissible in the State's case-in-chief at the second trial pursuant to § 46-16-701,

MCA, and that admission of his prior testimony in the second trial would violate his constitutional rights to due process and to be free from being compelled to testify against himself. The District Court concluded that the State's use of Ingraham's prior testimony during its case-in-chief would violate both § 46-16-701, MCA, and Ingraham's constitutional right to be free from being compelled to testify against himself, and granted Ingraham's motion. The State asserts error and we address the two bases for the District Court's decision in turn.

## A. Section 46-16-701, MCA

¶10 Section 46-16-701, MCA, provides that "[t]he granting of a new trial places the parties in the same position as if there had been no trial." Ingraham argued in the District Court that this statute precludes the use of his testimony from the first trial in a subsequent trial because, if there had been no prior trial, there would be no prior testimony. He relied on our statement in State v. Hall (1988), 234 Mont. 57, 62, 761 P.2d 1283, 1286, that

> [n]ew trials where prior testimony is not allowed must be granted on a limited basis, limited by Sections 46-16-701 and -702 after a jury verdict of guilty or a finding of guilty by the court.

The District Court determined that this language constituted a holding that § 46-16-701, MCA, operates to preclude the admission of prior testimony when a defendant is granted a new trial and, consequently, the State cannot use Ingraham's first trial testimony in the second trial in this case. The State contends, however, that Hall is not controlling authority and that, based on its legislative history, § 46-16-701, MCA, should not be interpreted as precluding prior testimony in a subsequent trial.

¶11 In Hall, the defendant was charged with three counts of felony theft. At the first trial-- in which the defendant testified--the jury could not reach a verdict and the district court declared a mistrial. At the second trial, the prosecution introduced portions of the defendant's testimony from the first trial into evidence; the defendant did not testify at this trial. The jury found the defendant guilty on all counts and the defendant appealed. Hall, 234 Mont. at 58-59, 761 P.2d at 1284.

¶12 On appeal, the defendant relied on § 46-16-701, MCA, in support of his argument that the district court erred in the second trial by admitting his testimony from the first trial. Hall, 234 Mont. at 61, 761 P.2d at 1285. We concluded that, because the first trial ended

in a mistrial as a result of the jury's failure to reach a verdict, the second trial was not a "new trial" as the term is used in § 46-16-701, MCA, and, consequently, the statute did not apply. Hall, 234 Mont. at 62, 761 P.2d at 1286. We went on to state that "[n]ew trials where prior testimony is not allowed must be granted on a limited basis, limited by Sections 46-16-701 and -702 after a jury verdict of guilty or a finding of guilty by the court." Hall, 234 Mont. at 62, 761 P.2d at 1286.1

¶13 We had already concluded that the statute did not apply to the case, however. As a result, our statement suggesting that prior testimony is not admissible in a new trial under § 46-16-701, MCA, was not necessary to the resolution of the issue before us and, therefore, was dictum. Dictum is not binding precedent. See State v. Montoya, 1999 MT 180, ¶ 24, 295 Mont. 288, ¶ 24, 983 P.2d 937, ¶ 24 (citation omitted). As a result, we conclude that Hall does not control our resolution of the issue before us. The parties do not cite--nor have we found--any other cases addressing the issue of whether § 46-16-701, MCA, precludes the use in a new trial of a defendant's testimony from a prior trial.

¶14 In the absence of any controlling case authority on this issue, the State argues that § 46-16-701, MCA, should be interpreted in a manner that would not preclude the admission of Ingraham's prior testimony and, furthermore, would not conflict with evidentiary rules which otherwise would allow admission of such testimony. See, e.g., Rule 801(d)(2), M.R.Evid. In support of this argument, the State contends that a review of the historical permutations of the statute reveals that the Montana Legislature did not intend for the current version of § 46-16-701, MCA, to preclude the use of prior testimony in a new trial. We agree.

¶15 The Montana Code has contained provisions relating to the grant of a new trial for over 100 years. In 1879, § 352 of Montana's Criminal Practice Act provided that "[t]he granting of a new trial, places the parties in the same position as if no trial had been had. The former verdict cannot be used, or referred to, either in the evidence or argument." This statute was amended in 1895 to provide that

> [t]he granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict cannot be used or referred to either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the indictment or information.

Sec. 2191, R.C.M. (1895).

¶16 The statute remained in this form until 1967, at which time it was recodified as § 95-2101(a), R.C.M. (1947), when the Legislature revised Montana's criminal procedure code. However, the Legislature also modified the statute by, *inter alia*, deleting the phrase "[a]ll the testimony must be produced anew . . .," so that the section read as follows:

> A new trial is a re-examination of the issue in the same court, before another jury, after a verdict or finding has been rendered and the granting of a new trial places the parties in the same position as if there had been no trial.

See 1967 Mont. Laws Ch. 196, Sec. 1. The section remained in essentially this form until 1991, when the phrase defining "new trial" was deleted (see 1991 Mont. Laws Ch. 800, Sec. 213), leaving only the sentence "[t]he granting of a new trial places the parties in the same position as if there had been no trial." This is the current form of § 46-16-701, MCA.

¶17 It is clear that, prior to 1967, the predecessor to § 46-16-701, MCA, expressly provided that testimony must be produced anew in a new trial. The corollary to that express provision, of course, was that testimony from an earlier trial could not be used in a new trial of the same case. In revising the criminal procedure code, however, the Legislature amended the statute by deleting the language requiring that testimony be produced anew.

¶18 It has long been the law that, when the Legislature amends a statute, we will presume that it meant to make some change in the existing law. Foster v. Kovich (1983), 207 Mont. 139, 144, 673 P.2d 1239, 1243; Tuttle v. Morrison-Knudsen Co., Inc. (1978), 177 Mont. 166, 172, 580 P.2d 1379, 1382; Nichols v. School Dist. No. 3 of Ravalli County (1930), 87 Mont. 181, 186, 287 P. 624, 627. Consequently, we presume that the Legislature, through its 1967 amendment, intended to change the existing law and allow the use of testimony from a prior trial in a new trial. Furthermore, as the pertinent portion of the statute has not changed substantively since 1967, we conclude that § 46-16-701, MCA, continues to reflect this intent. Therefore, we conclude that § 46-16-701, MCA, does not preclude the State from using Ingraham's testimony from the first trial during its case-in-chief at the retrial of this case and the District Court's conclusion to the contrary is erroneous.

## B. Harrison v. United States

¶19 Ingraham also contended in the District Court that use of his first trial testimony in his second trial would violate his right to be free from being compelled to testify against

himself as guaranteed by the Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution. In support of this contention he relied on Harrison v. United States (1968), 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047, as interpreted by the Michigan Court of Appeals in People v. Armentero (Mich. App. 1986), 384 N.W.2d 98. The District Court concluded that, under the Harrison/Armentero analysis, use of Ingraham's testimony would violate his constitutional rights because he had been compelled to testify in the first trial as a result of the State's use of the prescription drug evidence which we later determined was improperly admitted. The State argues that the court erred in relying on Armentero and that a straightforward analysis under Harrison establishes that use of Ingraham's prior testimony would not violate his constitutional right to be free from being compelled to testify against himself.

¶20 The defendant in Harrison was charged with the offense of felony murder. At trial, the prosecution presented evidence of three confessions allegedly made by the defendant when he was in police custody. After the confessions were admitted into evidence, the defendant testified. The jury found the defendant guilty and he appealed. The conviction was reversed on the basis that the confessions had been obtained illegally and, therefore, were inadmissible. Harrison, 392 U.S. at 220, 88 S.Ct. at 2009, 20 L.Ed.2d at 1050. Another trial was held, during which the prosecution read the defendant's testimony from the previous trial to the jury. The jury returned a guilty verdict. The defendant again appealed, arguing that his prior trial testimony was inadmissible in the second trial because the admission of the illegally obtained confessions in the first trial compelled him to testify. The United States Supreme Court granted certiorari to review the issue. Harrison, 392 U.S. at 221, 88 S.Ct. at 2009, 20 L.Ed.2d at 1050-51.

¶21 The Supreme Court first observed that a defendant's testimony in a prior trial generally is admissible in evidence against him in later proceedings because "[a] defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives . . . ." Harrison, 392 U.S. at 222, 88 S. Ct. at 2010, 20 L.Ed.2d at 1051. The Supreme Court held, however, that where a defendant is compelled to testify as a result of evidence which has been illegally obtained and improperly admitted into evidence, the testimony is inadmissible in a later trial because it is fruit born of the poisonous tree that was the illegally obtained evidence. Harrison, 392 U.S. at 222-24, 88 S.Ct. at 2010, 20 L.Ed.2d at 1051. Thus, because the prosecution in Harrison failed to meet its burden of establishing that the defendant had testified in the first trial for reasons other than to overcome the impact of the illegal evidence, his testimony was inadmissible in the second trial. Harrison, 392 U.S. at 225-26,

88 S.Ct. at 2011-12, 20 L.Ed.2d at 1053.

¶22 In subsequent cases, both federal and state courts have held that, in order to preclude the use of prior testimony in a subsequent trial under the Harrison rationale, the testimony must have been compelled by the admission of evidence both illegally obtained--such as through the use of unconstitutional law enforcement practices--and improperly admitted at trial. See, e.g., United States v. Bohle (2nd Cir. 1973), 475 F.2d 872, 875-76; Patton v. U. S. (D.C. App. 1997), 688 A.2d 408, 411; State v. Hunt (N.C. 1994), 457 S.E.2d 276, 285; Towe v. State (Ark. 1990), 801 S.W.2d 42, 43; State ex rel. LaSota v. Corcoran (Ariz. 1978), 583 P.2d 229, 237-38. Conversely, where a defendant's testimony is compelled as a result of evidence which is held to have been improperly admitted pursuant to an evidentiary rule, rather than because it was unconstitutionally obtained, Harrison does not operate to preclude use of the testimony in a later trial. Bohle, 475 F.2d at 875-76; Patton, 688 A.2d at 411; Hunt, 457 S.E.2d at 285; Towe, 801 S.W.2d at 43; LaSota, 583 P.2d at 237-38.

¶23 Here, we reversed Ingraham's first conviction based, in part, on our conclusion that the State's drug prescription evidence was improperly admitted because the State failed to establish a nexus between the presence of the drugs in Ingraham's blood and urine and his ability to drive a vehicle on the night of the accident It is this improperly admitted evidence which, according to Ingraham, compelled him to testify in the first trial and precludes the use of that testimony in a future trial. However, our holding that the drug prescription evidence was improperly admitted was based solely on evidentiary principles and not on a determination that the evidence had been obtained illegally. Consequently, Harrison does not preclude the use of Ingraham's prior trial testimony in a new trial.

¶24 Ingraham contends that there is a "split of authority" regarding whether the Harrison rationale applies only in cases where the evidence compelling the defendant to testify was illegally obtained in the first instance. He cites several cases which he asserts stand for the proposition that Harrison applies in any situation where the evidence compelling the defendant's testimony infringes upon the defendant's right to a fair trial, regardless of whether the evidence was illegally obtained. Thus, Ingraham urges us to conclude that, since we previously determined that the drug prescription evidence was so prejudicial that it denied him a fair trial and required a reversal of his conviction, that evidence was "illegal" under the Harrison analysis. We are not persuaded by the cases on which Ingraham relies.

¶25 In People v. Duncan (Ill. App. 1988), 527 N.E.2d 1060, the defendant was granted a new trial based on the ineffective assistance of his trial counsel. On retrial, the trial court ruled that the prosecution could not use the defendant's prior trial testimony in its case-in-chief at the second trial. The Illinois Court of Appeals affirmed, stating that the lack of effective assistance of counsel "colored the entire proceeding" and "suggests that the defendant's statements were not made with any degree of particular advice." Duncan, 527 N.E.2d at 1062. In other words, the defendant's testimony was not precluded because it was compelled by the improper admission of any particular evidence, but because the defendant's decision to testify--and concomitant waiver of his Fifth Amendment rights--was not made voluntarily and knowingly. Duncan did not address the issue presently before us.

¶26 In People v. Spencer (N.Y. App. 1996), 641 N.Y.S.2d 910, the defendant's first conviction was reversed after an investigation revealed that law enforcement officers in the case had falsified evidence and suborned perjured testimony from a witness. Spencer, 641 N.Y.S.2d at 911. The defendant was convicted again following a retrial of the case in which the prosecution entered the defendant's testimony from the first trial into evidence. The appellate court determined that, pursuant to Harrison, the trial court erred in allowing the testimony because it had been compelled by the admission of evidence which had been obtained as the result of illegal police activity. Spencer, 641 N.Y.S.2d at 912. This holding is in accord with the interpretation of Harrison by other courts that the evidence compelling a defendant's testimony must be both illegally obtained and improperly admitted into evidence. See Bohle, 475 F.2d at 875-76; Patton, 688 A.2d at 411; Hunt, 457 S.E.2d at 285; Towe, 801 S.W.2d at 43; LaSota, 583 P.2d at 237-38. As a result, Spencer does not support Ingraham's argument here.

¶27 The last case on which Ingraham relies is Armentero. In that case, the defendant was convicted by a jury of murder in the second degree. One of the prosecution's witnesses at the first trial was the defendant's wife. The conviction was reversed on appeal because the failure of the defendant's counsel to object to the wife's testimony based on marital privilege constituted ineffective assistance of counsel. Armentero, 384 N.W.2d at 100. At the second trial, the prosecution attempted to introduce the defendant's testimony from the first trial and the defendant objected, asserting that his first trial testimony was compelled in response to the improper admission of his wife's testimony. The trial court admitted the defendant's prior testimony after excising those portions that directly related to the wife's testimony. The defendant again was convicted of second degree murder and again appealed. He argued, *inter alia*, that the trial court erred in admitting his prior testimony.

Armentero, 384 N.W.2d at 100.

¶28 In addressing this issue, the Michigan Court of Appeals first set forth the well-established rule that a defendant's prior testimony generally is admissible in a subsequent proceeding and the Harrison exception to this rule when the defendant's prior testimony is compelled by the improper admission of illegally obtained evidence. Armentero, 384 N.W.2d at 100-01. The Michigan court held that the Harrison exception did not apply in that case because, although the wife's testimony had been improperly admitted in the first trial, the testimony was not "illegal" in the Harrison sense. Armentero, 384 N.W.2d at 102. In so holding, the court set forth its own interpretation of what the United States Supreme Court meant by "illegal evidence":

> The application of the *Harrison* exception to the general rule of allowing into evidence a defendant's prior testimony depends upon the existence of evidence which is illegal in one of . . . two ways . . . . The evidence impelling the defendant's prior testimony must infringe upon a basic constitutional value (such as the Fifth Amendment right to be free from being compelled to incriminate oneself), or it must threaten the credibility of the verdict, because of the unreliability of the evidence (such as unlawfully obtained confessions), thus infringing upon the defendant's constitutional right to a fair trial.

> By defining "illegal" evidence in this way, the application of the *Harrison* exception is not restricted to situations where police misconduct has produced the evidence that impels defendant's prior testimony. Such a narrow limitation of *Harrison* to the traditional "fruits of the poisonous tree" doctrine is not warranted . . . . *Harrison* is only limited to situations where the evidence impelling a defendant's prior testimony is illegal in the sense that it infringes upon basic constitutional values or, to put it another way, upon a defendant's right to a fair trial.

Armentero, 384 N.W.2d at 101-02. Notwithstanding the Michigan court's willingness to extend the Harrison doctrine to situations other than where the underlying evidence compelling a defendant's testimony was illegally obtained by law enforcement misconduct, the court held that the defendant's prior testimony was admissible because admission of the wife's testimony neither infringed on the defendant's basic constitutional rights nor was unreliable evidence which denied the defendant a fair trial. Armentero, 384 N.W.2d at 102.

¶29 Ingraham relies on the above-quoted language from Armentero in urging us to similarly extend the Harrison rationale to apply in situations other than where the

underlying evidence at issue was obtained via unconstitutional law enforcement practices. He argues that, because we held that the State's prescription medication evidence was improperly admitted and was so prejudicial that it denied him a fair trial and required a reversal of his conviction, the evidence was "illegal" under the Armentero interpretation of Harrison. Consequently, according to Ingraham, his first trial testimony cannot be used in the second trial because he was compelled to testify in response to "illegal" evidence.

¶30 We decline to adopt the Armentero analysis. Despite Ingraham's contention that there is a "split of authority" as to the extent of Harrison's application, he does not cite--nor have we found--any other jurisdiction which has relied on Armentero for its interpretation of Harrison or which similarly extends the Harrison rationale. To the contrary, as we observed above, a number of jurisdictions expressly have limited Harrison to those situations where the evidence compelling a defendant's testimony was illegally obtained through unconstitutional law enforcement conduct. See Bohle, 475 F.2d at 875-76; Patton, 688 A.2d at 411; Hunt, 457 S.E.2d at 285; Towe, 801 S.W.2d at 43; LaSota, 583 P.2d at 237-38. This limitation on Harrison's applicability is appropriate. The Supreme Court's holding that prior testimony is inadmissible in a later proceeding only when it was compelled by the admission of evidence both illegally obtained and improperly admitted was based on application of the exclusionary rule which requires suppression of any evidence which emanates from underlying evidence which is obtained in violation of a defendant's constitutional rights. See Harrison, 392 U.S. at 222, 88 S.Ct. at 2010, 20 L. Ed.2d at 1051. The Supreme Court's Harrison holding having been based on the "fruits of the poisonous tree" doctrine, we conclude that Harrison is properly limited to that application.

¶31 Finally, in his supplemental brief, Ingraham contends that we should hold his prior testimony inadmissible in the second trial based on Article II, Section 25 of the Montana Constitution, which provides that "[n]o person shall be compelled to testify against himself in a criminal proceeding . . . ." In essence, he urges us to interpret Montana's Constitution as providing broader protection than that provided by the Fifth Amendment to the United States Constitution. However, Ingraham provides no analysis or citation to legal authority in support of the proposition that Montana's constitutional right to be free from self-incrimination is broader than the corresponding federal constitutional right. "A party's arguments must be supported with citation to legal authority and, where no authority is cited, we will not address the arguments." State v. Anderson, 1999 MT 60, ¶ 21, 293 Mont. 490, ¶ 21, 977 P.2d 983, ¶ 21 (citations omitted). Consequently, we decline to address Ingraham's argument here.

¶32 We conclude that the District Court's determination that <u>Harrison</u> precludes the State's use of Ingraham's first trial testimony during its case-in-chief on retrial is erroneous. As a result, we hold that the District Court abused its discretion in granting Ingraham's motion *in limine* and precluding the State from using Ingraham's testimony in the first trial during its case-in-chief at the second trial.

¶33 Reversed and remanded for further proceedings.

/S/ KARLA M. GRAY

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ RICHARD A. SIMONTON

Judge of the District Court,

sitting for Justice Terry N. Trieweiler

Justice W. William Leaphart, dissenting.

¶34 I concur with the Court's conclusion that § 46-16-701, MCA, does not preclude the State from using Ingraham's testimony from the first trial during its case-in-chief at the retrial of this case.

¶35 I dissent from the Court's conclusion that use of his first trial testimony in his second trial would not violate his constitutional right to be free from being compelled to testify against himself.

¶36 In making his constitutional argument, Ingraham invokes the United States Supreme Court decision in United States v. Harrison (1968), 392 U.S. 219, 88 S.Ct. 2008, 20 L. Ed.2d 1047. In *Harrison*, the United States Supreme Court posed the following: "The question is not *whether* the petitioner made a knowing decision to testify, but *why*."

*Harrison*, 392 U.S. at 223, 88 S.Ct. at 2010, 20 L.Ed.2d at 1052. The Court held that since Harrison's testimony in the first trial was compelled by the introduction of illegally obtained confessions, that testimony was inadmissible in a later trial. *Harrison*, 392 U.S. at 226, 88 S.Ct. at 2012, 20 L.Ed.2d at 1053.

¶37 The State of Montana argues, and this Court now agrees, that the *Harrison* rule is applicable only to situations where the defendant testifies in response to evidence which was *both* illegally obtained and improperly introduced. Although *Harrison* involved a fact situation where illegally obtained confessions were improperly admitted into evidence, thus compelling Harrison to take the stand, I fail to see why the rationale of the *Harrison* ruling should be restricted to that limited scenario.

¶38 As the United States Supreme Court noted, the pivotal question is "why" did the defendant take the stand. If he was compelled to respond to improperly admitted evidence then his decision was not "voluntary" and he was denied a fair trial. Although the improper admission of illegally obtained evidence perhaps represents the strongest basis for the *Harrison* ruling, it is not, by any means, the only basis. A defendant who is confronted with improperly admitted evidence may be compelled to take the stand to rebut that evidence irrespective of whether the evidence was illegally obtained. For example, in violation of Rule 609, M.R.Evid., the State may have introduced evidence that the defendant had been convicted of a crime; it may have offered evidence of prior wrongs or acts to show that the defendant acted in conformity therewith, in violation of Rule 404, M.R.Evid.; it may have improperly introduced hearsay evidence in violation of Rule 802, M.R.Evid., or, as here, the State may have introduced irrelevant and highly prejudicial evidence in violation of Rule 402, M.R.Evid. None of the above examples involve illegally obtained evidence. Nevertheless, a defendant who would not otherwise have chosen to testify, when confronted with such improper evidence, may be compelled to take the stand and respond. Under such circumstances, it cannot be said that his or her choice to testify was voluntarily made. Having been compelled to take the stand by the introduction of improperly admitted evidence, the defendant is denied a fair trial.

¶39 The Court cites a number of cases from federal and state courts which have held that the *Harrison* rationale only applies where the evidence has been both illegally obtained and improperly admitted. However in each of these decisions, the Court does nothing more than recite the fact that the *Harrison* decision involved illegally obtained confessions and that no other court has extended the *Harrison* rationale to "mere evidentiary errors." United States v. Bohle (2nd Cir. 1973), 475 F.2d 872, 875-76 ("[w]e see no reason to

extend the 'fruits' doctrine to testimony 'impelled' by mere evidentiary hearsay error, as distinct from unconstitutional police practices"). The *Bohle* court determined that the defendant had testified before the questionable evidence had been introduced. Thus, even if *Harrison* were to apply, the government met its burden of showing that its evidence did not induce the defendant's testimony. Patton v. U.S. (D.C. App. 1997), 688 A.2d 408, 411 ("[w]e know of no case in which a court has excluded, under the doctrine of *Harrison IV*, testimony said to have been induced by an incorrect evidentiary ruling"); State v. Hunt (N. C. 1994), 457 S.E.2d 276, 285 (even if testimony at first trial were induced by inadmissible evidence rather than unconstitutionally obtained evidence, the *Harrison* exception would not apply); Towe v. State (Ark. 1990), 801 S.W.2d 42, 43 (concluding that *Harrison* is inapplicable to routine evidentiary rulings); State ex rel. LaSota v. Corcoran (Ariz. 1978), 583 P.2d 229, 237-38 (given the Supreme Court's reliance on "fruit of the poisonous tree doctrine," the *Harrison* rationale cannot be applied to evidence which was not illegally obtained). None of the decisions cited by the Court engaged in any independent analysis as to why the Supreme Court's concern with compelled testimony would not apply where a defendant is compelled to respond to improperly admitted evidence, regardless of whether that evidence was illegally obtained.

¶40 The above decisions all assume that the *Harrison* rationale is nothing more than an extension of the "fruit of the poisonous tree" doctrine. Although that doctrine is certainly part of the Supreme Court's reasoning, it is not the sole basis for its decision. There is an equally grave concern with the government using inadmissible evidence to force a defendant into taking the witness stand, thereby forfeiting his/her constitutional right to remain silent.

¶41 The ultimate inquiry is not whether there was impermissible police activity, but whether the confession was voluntary. State v. Lenon (1977), 174 Mont. 264, 271, 570 P.2d 901, 906. Although impermissible police conduct certainly undermines a person's volition, it is not the *sine qua non* of coercion. A defendant who is confronted at trial with the introduction of evidence of prior convictions, prior bad acts, irrelevant and prejudicial evidence or hearsay testimony may be under as much if not more compulsion to forego his constitutional right to remain silent and to testify when he would not otherwise have done so. When he or she testifies under such coercive circumstances, the resulting testimony cannot be deemed to have been voluntarily given.

¶42 In Schneckloth v. Bustamonte (1973), 412 U.S. 218, 225-26, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854, 861, the United States Supreme Court recognized that:

> "[V]oluntariness" has reflected an accommodation of the complex of values implicated in police questioning of a suspect. At one end of the spectrum is the acknowledged need for police questioning as a tool for the effective enforcement of criminal laws. . . . At the other end of the spectrum is the set of values reflecting society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness . . . . [Citations omitted.]

¶43 I would liken Ingraham's first trial testimony to a confession which was obtained under undue influence. If, despite the improper introduction of irrelevant and highly prejudicial evidence in his first trial, Ingraham's coerced testimony can be used against him in a second trial, it must be said that the criminal law (the rules of evidence) have been used as an *instrument of unfairness*.

¶44 The distinction between a case where the evidence was both illegally obtained and improperly admitted and a case in which evidence is only improperly admitted is a distinction without a difference. Both may result in compelled testimony. I would hold that improperly admitted evidence alone is sufficient to trigger the *Harrison* rationale and require the court to determine whether the evidentiary error was so prejudicial that it can be deemed to have been the impetus behind the defendant's decision to testify. If the record shows that the defendant would not have taken the stand but for the improper evidence, then his testimony should not be admissible in a subsequent trial.

¶45 I would affirm the decision of the District Court and hold that the use of Ingraham's testimony in the second trial would violate his right to remain silent as guaranteed by the Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson and the District Court Judge Susan P. Watters join in the foregoing dissenting opinion.

/S/ JAMES C. NELSON

/S/ SUSAN P. WATTERS

Judge of the District Court,

sitting for Chief Justice J. A. Turnage