UNITED STATES, Appellee

v.

Robert E. MURRAY, Master Sergeant
U.S. Marine Corps, Appellant.

No. 94–0175.
CMR No. 91 1350.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 12, 1995.

Decided June 12, 1995.

For Appellant: *Major Hagen W. Frank,* USMC (argued).

For Appellee: *Lieutenant R.W. Sardegna,* JAGC, USNR (argued); *Colonel T.G. Hess,* USMC and *Commander S.A. Stallings,* JAGC, USN (on brief).

*Opinion of the Court*

GIERKE, Judge:

1. A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of raping a 9–year–old girl, committing an indecent act with her, and taking indecent liberties with her, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. After findings, the military judge dismissed the specification regarding the indecent act on the ground that it merged into the rape specification. The military judge sentenced appellant to a dishonorable discharge, confinement for 20 years, total forfeitures, and reduction to the lowest enlisted grade.

2. At trial appellant was represented by Mr. Alan Edmunds, a civilian lawyer admitted to practice in the State of California. Appellant did not desire a military defense counsel at that time. After trial, appellant dismissed Mr. Edmunds, hired another civilian defense counsel, and requested and received a military defense counsel. At a post-trial hearing convened at defense request, the military judge declared a mistrial as to sentence on the ground that Mr. Edmunds' performance as defense counsel had been ineffective. The military judge denied the motion for mistrial as to findings.

3. At a subsequent resentencing hearing, the same military judge sentenced appellant

to a dishonorable discharge, confinement for 6 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence, and the Court of Military Review affirmed the findings and sentence in an unpublished opinion.

4. This Court granted review of the following issues *:

I

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION DURING A POST–TRIAL HEARING ON APPELLANT'S MOTION ASSERTING DEPRIVATION OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE, HAVING FOUND THE [CIVILIAN] TRIAL DEFENSE COUNSEL'S PERFORMANCE DEFICIENT, HE ASSESSED THE DEFICIENCY FOR PREJUDICE EMPLOYING A SUBJECTIVE VICE AN OBJECTIVE TEST BECAUSE HE HAD SAT AS THE TRIER OF FACT.

II

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED WHERE IT ACCEPTED THE MILITARY JUDGE'S FACTUAL DETERMINATIONS CONCERNING SPECIFIC INADEQUACIES IN [CIVILIAN] TRIAL DEFENSE COUNSEL'S REPRESENTATION AND FOUND THAT COUNSEL'S PERFORMANCE DEFICIENT BUT FOUND NO PREJUDICE BECAUSE IT DID NOT BELIEVE THAT APPELLANT WOULD HAVE BEEN ACQUITTED BUT FOR THE DEFICIENCIES, NOTWITHSTANDING THE TRIAL JUDGE'S STATEMENT THAT HE WOULD HAVE FOUND PREJUDICE HAD HE EMPLOYED AN OBJECTIVE STANDARD.

5. The prosecution's case rested on the testimony of: the victim, *a medical doctor regarding physical evidence of vaginal pen-*

---

* We also granted review of the issue (39 MJ 429) that has been resolved in favor of the Government in *United States v. Mitchell, 39 MJ* 131(CMA), *cert. denied,* —— U.S. ——, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994).

etration, and the victim's mother and a psychologist regarding changes in the victim's behavior, as well as a school official to whom the victim reported that she had been sexually abused by appellant.

6. The defense was based on a theory of sleep deprivation. Appellant testified on the merits. He testified that he was working "[m]ostly 24 hours a day" at his military duties and off-duty employment. He was not sleeping regular hours during February and March 1989, when the offenses allegedly occurred. Defense counsel asked him directly if he committed the offenses, and he responded, "No, not at my recollection."

7. Appellant's wife testified that appellant had difficulty sleeping. Dr. Lightner, a psychologist, testified concerning the effects of sleep deprivation. He had treated appellant for chronic depression and a brief "reactive psychosis in which he became very confused, somewhat delusional in response to ... stressors in his life." Dr. Lightner had concluded that sleep deprivation was a "significant issue" in his diagnosis. Based on the foregoing evidence, defense counsel argued that appellant had diminished capacity at the time of the alleged offenses.

8. At the post-trial hearing, the military judge considered uncontested evidence that Mr. Edmunds had not interviewed any of the prosecution's witnesses before trial. Mr. Edmunds testified that he knew that his evidence of sleep deprivation did not rise to the level of insanity, but "it was the best that we had, and that's why it was presented." Mr. Edmunds explained further, "I just tried to show that this guy was in essence a zombie, he worked so hard, how many jobs, that it was—there was no insanity here, there was no defect, there was no disease, but I was just trying to show that perhaps if he had slept a normal eight hours a day like most people that these events wouldn't have occurred."

9. Mr. Edmunds testified that he and appellant discussed whether appellant should testify and that appellant told him that he wanted to testify and deny committing the offenses. Mr. Edmunds testified that appellant's actual testimony was "totally shocking"

in that he did not deny committing the offenses but instead testified that he did not know if he committed the offenses.

10. The military judge found specifically that the defense theory of sleep deprivation "did virtually nothing in terms of contesting or addressing or testing the Government's evidence." The military judge further found that defense counsel failed to conduct an adequate pretrial investigation, failed to object to inadmissible evidence, failed to effectively cross-examine the victim, and failed to present "a plausible, legitimate, believable defense." The military judge concluded that defense counsel's performance had been deficient within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

11. Based on defense counsel's deficient performance, the military judge declared a mistrial as to sentence. He declined to declare a mistrial as to findings, stating the following:

> The bottom line that I found subjectively when I returned a finding of guilty in this case, I relied upon the testimony of Michelle, somewhat shaken, but not destroyed. I found Michelle's testimony to be corroborated by the medical evidence in this case, and I was confident beyond a reasonable doubt at the conclusion of the testimony of Master Sergeant Murray [that the] sleep-deprivation defense that was presented by the defense did not raise reasonable doubt in my mind.
>
> I did not find it to be a plausible, legitimate, believable defense. It was not—the defense was not well-presented. Dr. Lightner could not testify as to the specifics nor was a factual foundation as to the specifics laid. As a result, that did not raise any doubt, as far as I was concerned, about the findings in this case. Could it have? Maybe, I don't know. Again, there is no evidence before me to show that the failure of Mr. Edmunds to present a competent defense in this case resulted in prejudice.
>
> Subjectively, I do not believe that looking at all of the errors committed by Mr. Edmunds in this case, the inactivity, rea-

sonably would lead me to a different result on the merits. Quite the contrary in sentencing.

Now, I want to make clear for the record one thing. As I stated initially, I am looking at this in subjective analysis ... If I were sitting as an appellate court or if I were examining the findings of members in this case, if this had been a members case, based upon the evidence before me, I would grant the defense motion. If I employed an objective standard, I would grant the defense motion. The only reason—I feel the errors were so egregious in this case, the only reason I am not going to grant the motion on the merits is because I know what I decided when I first heard the case, and I know now that the defense has developed some of the errors. I know how, if at all, and to what extent that would have affected my initial findings.

I am deciding this strictly on a subjective basis. I don't know what else to do. It's the best I can do in good conscience. I want to put that on the record because, if I'm wrong, I want the appellate courts to make sure they understand the basis for my decision....

12. The Court of Military Review likewise found Mr. Edmunds' performance seriously deficient but concluded that the findings were not affected because "the evidence of appellant's guilt was overwhelming." Unpub. op. at 2. Before this Court, the Government does not contest the conclusions of the military judge and the Court of Military Review regarding the inadequacy of Mr. Edmunds' performance. The only issues before us relate to the second prong of the *Strickland* test: Whether appellant was prejudiced as to findings. 466 U.S. at 687, 104 S.Ct. at 2064. We hold that the military judge erred by applying a subjective standard to assess prejudice. We hold further, upon *de novo* review of the record, that appellant was prejudiced within the meaning of *Strickland.*

■■■ 13. The Sixth Amendment confers a constitutional right "to have the Assistance of Counsel." The Supreme Court in *Strickland* defined a "fair trial" as "one in which evidence *subject to adversarial testing* is pre-

sented to an impartial tribunal." 466 U.S. at 685, 104 S.Ct. at 2063 (emphasis added). "An accused is entitled to be assisted by an attorney ... who plays the role necessary to ensure that the trial is fair." Defense counsel's role "is critical to the ability of the adversarial system to produce just results." 466 U.S. at 685, 104 S.Ct. at 2063. When an appellant asserts that he has been denied the right to effective assistance of counsel, "[t]he benchmark ... must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064, *quoted* in *United States v. Holt,* 33 MJ 400, 409 (CMA 1991). To establish that defense counsel was ineffective, an appellant must "show" two elements:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. at 2064.

14. Only the element of prejudice is at issue in this appeal. The first granted issue concerns the standard for determining whether an appellant has been prejudiced by counsel's deficient performance. Appellant asserts that the military judge incorrectly applied a subjective standard. The Government agrees that the military judge applied a subjective standard but argues that he was correct in doing so in this case.

■■■ 15. The *Strickland* test for determining prejudice is based on a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068. The test is applied "on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision."

The test of prejudice "should not depend on the idiosyncracies of the particular decisionmaker." 466 U.S. at 695, 104 S.Ct. at 2068. The actual impact on the decisionmaker "is irrelevant to the prejudice inquiry." 466 U.S. at 700, 104 S.Ct. at 2071.

■ 16. The Supreme Court's references to reasonable probabilities and reasonable decisionmakers clearly establish that the test is objective: Whether there is a reasonable probability that a reasonable factfinder would have reached a different result. Accordingly, we hold that the military judge erred by applying a subjective test for prejudice.

■ 17. Whether an appellant was prejudiced by ineffective representation is a mixed question of law and fact, reviewable *de novo* on appeal. 466 U.S. at 698, 104 S.Ct. at 2070. The prosecution case rested on the testimony of the victim, which the military judge observed was "somewhat shaken, but not destroyed." Both the military judge and the Court of Military Review found that Mr. Edmunds failed to prepare for trial, failed to competently test the credibility of the prosecution witnesses, failed to object to inadmissible evidence, and failed to present a plausible defense. The military judge deduced— and correctly so in our view—that Mr. Edmunds' theory of the defense was to concede that the acts occurred but to defend on the ground that appellant was suffering from sleep deprivation at the time. The military judge deduced the defense theory from the testimony of Mr. Edmunds, which he found "astonishing and at times, frankly, nonsensical."

18. There were several problems with Mr. Edmunds' theory of the defense. First, as he frankly admitted, it was not a defense to rape. Second, as the military judge found, the defense was poorly presented. Finally, it was contrary to the wishes of appellant, who—according to Mr. Edmunds' own testimony—told Mr. Edmunds that he wanted to testify and deny that he committed the offenses. Mr. Edmunds testified that he expected appellant to deny committing the acts charged and was "totally shocked" when ap-

pellant testified that he did not know if he committed the acts.

19. Mr. Edmunds had a choice of testing and attacking the government evidence or conceding that the acts occurred and presenting an affirmative defense. He did neither. There was a total breakdown of the adversarial process in this case. *See United States v. Scott,* 24 MJ 186, 193 (CMA 1987) ("[T]he Government's evidence at trial was strengthened by the unpreparedness and lack of investigation by defense counsel. This deficiency casts doubt on the reliability of the adversarial testing process of the trial."). Under these circumstances, we hold that there was a "reasonable probability" that a reasonable factfinder would have reached a different result if appellant had been competently represented.

20. What then do we make of the military judge's subjective conclusion that he would have convicted appellant even if a competent defense had been presented? First, his subjective conclusion is irrelevant for the reasons set out above. Second, his subjective conclusion is unreasonable because it rejects the critical role of counsel in assuring the reliability of the factfinding process. If a military judge can accurately predict how he or she will decide a case without the participation of a competent defense counsel, there is no need to go through the motions of putting on a defense. *See Kimmelman v. Morrison,* 477 U.S. 365, 377, 106 S.Ct. 2574, 2584, 91 L.Ed.2d 305 (1986) ("Without counsel the right to a fair trial itself would be of little consequence...."); *Strickland v. Washington,* 466 U.S. at 685, 104 S.Ct. at 2063 (Counsel's role "is critical to the ability of the adversarial system to produce just results.").

The decision of the United States Navy–Marine Corps Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.