**UNITED STATES**

v.

**Robert E. MURRAY, Master Sergeant (E–8), U.S. Marine Corps.**

NMCM 91 01350.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 12 April 1996.

Decided 21 Jan. 2000.

LT R.A. Rice, Jr., JAGC, USNR, Appellate Defense Counsel.

LCDR John A. Maksym, JAGC, USNR, Appellate Government Counsel.

LT Russell J.E. Verby, JAGC, USNR, Appellate Government Counsel.

Before DeCICCO, Chief Judge, TROIDL, Senior Judge, and ANDERSON, Appellate Military Judge.

TROIDL, Senior Judge:

On 3 January 1990, a military judge, sitting as a general court-martial, convicted the appellant contrary to his pleas of rape, indecent acts upon a child, and indecent liberties with a child, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 (1994).[1] The adjudged sentence included a dishonorable discharge, 20 years confinement, total forfeitures, and reduction to pay grade E–1.

After trial, the appellant fired his civilian defense counsel, hired a new civilian attorney, and obtained the services of an individual military counsel. On 16 May 1990, prior to authentication of the record of trial, the appellant filed a motion for appropriate relief in which he requested that the military judge declare a mistrial based upon ineffective assistance of counsel. Evidence was presented concerning the motion at post-trial Article 39(a), UCMJ, sessions conducted on 4, 7, and 12 June 1990. This evidence reflected that the appellant never admitted to his original civilian attorney, Mr. Allen Edmunds, that he had committed the alleged offenses; that the appellant had expressed a desire to take the stand and deny the charges; that Mr. Edmunds nonetheless pursued a trial strategy which did not contest that the events occurred but rather offered "sleep deprivation"

---

1. The military judge merged the indecent acts and rape offenses, dismissing the former.

as the cause; that Mr. Edmunds was deficient in both his pretrial preparation of the appellant's case and in his courtroom performance; and, that the appellant testified that he could not "recollect" whether he had committed the offenses, testimony which was consistent with Mr. Edmunds' theory of the case.

The military judge granted the motion for a mistrial as to the sentencing phase of the trial, but denied it as to the findings, subjectively concluding that he would have reached the same findings even if a competent defense had been presented. A rehearing on sentence was conducted and, on 21 August 1990, the military judge sentenced the appellant to a dishonorable discharge, six years confinement, total forfeitures, and reduction to pay grade E-1. The convening authority approved this adjudged sentence on 4 April 1991.

On appeal, the appellant asserted that the ineffective assistance of his civilian counsel extended to the merits as well as to sentencing and asked this court to set aside the findings and sentence. Although this court found "serious deficiencies in the trial defense counsel's representation of the appellant on the merits, including the failure to interview or timely interview witnesses, the failure to follow through on seeking the assistance of an expert or requesting that the Government provide an expert, and the failure to adopt a sound theory to defend against the most serious offense," we affirmed based upon the overwhelming evidence of guilt and the fact that "there has been no showing that the defense has been prejudiced or that the outcome on findings

would have been different but for this deficient performance." *United States v. Murray*, No. 9101350 (N.M.C.M.R. 14 Sept. 1993)(unpublished decision at 2).

The U.S. Court of Appeals for the Armed Forces [CAAF] subsequently reversed this court's decision, finding that the appellant was prejudiced by his counsel's ineffective assistance[2] and holding that "there was a 'reasonable probability' that a reasonable factfinder would have reached a different result if appellant had been competently represented."[3] *United States v. Murray*, 42 M.J. 174, 178 (1995). Our superior Court set aside the findings and sentence, authorized a rehearing, and returned the record to the Judge Advocate General.

On 5 December 1995, a general court-martial convening authority referred charges of rape, indecent acts upon a child, and indecent liberties with a child, in violation of Articles 120 and 134, UCMJ, for trial by general court-martial. The military judge subsequently dismissed the indecent acts upon a child specification. Record at 153. At trial, the Government made a Motion *in Limine*, requesting that the Government be allowed to admit the appellant's testimony at his original trial during the Government's case-in-chief, or, in the alternative, as rebuttal evidence. Appellate Exhibit XXV.[4] The motion was opposed by the appellant. Appellate Exhibit XXVII. Following vigorous argument by both sides, the military judge ruled that the appellant's testimony at his previous trial was admissible since it was relevant, did not constitute hearsay, and was not the result of ineffective assistance of counsel.[5] Record at 136–37. The appellant

---

**2.** The court wrote that:

> The military judge deduced—and correctly so in our view—that Mr. Edmunds' theory of the defense was to concede that the acts occurred but to defend on the ground that appellant was suffering from sleep deprivation at the time ... There are several problems with Mr. Edmunds' theory of the defense. First, as he frankly admitted, it was not a defense to rape. Second, as the military judge found, the defense was poorly presented. Finally, it was contrary to the wishes of appellant, who—according to Mr. Edmunds' own testimony—told Mr. Edmunds that he wanted to testify and deny that he committed the offenses.... Mr. Edmunds had a choice of testing and attacking the gov-

ernment evidence or conceding that the acts occurred and presenting an affirmative defense. He did neither. This was a total breakdown of the adversarial process in this case. *Murray*, 42 M.J. at 178.

**3.** CAAF held that the original military judge's subjective conclusion was irrelevant and unreasonable.

**4.** Unless otherwise indicated, all references to pages in the record or to exhibits refer to the record of the rehearing conducted in 1995–96.

**5.** In this regard, the military judge discussed the finding of the original military judge at the post-

pled not guilty to all charges and specifications.

After assembly of the court-martial, which was comprised of officer and enlisted members, the trial counsel made an opening statement in which he remarked that "there are two pieces of important evidence in this case." Record at 361. He went on to identify the first as the testimony of the child victim [M]. Explaining that [M] was 16 years-old at the time of the rehearing, but only nine years-old at the time of the alleged offenses, trial counsel noted that she cannot recall "every little detail" of the alleged offenses. He also acknowledged that the members would learn "that her testimony in court today will differ from the accounts that she gave in 1989 and some previous testimony that she gave in 1990," but asks the members to keep the age variance in mind when considering the differences. Record at 363–64. Trial counsel then stated that "[t]he second important piece of evidence in this case, besides [M]'s testimony is the statements of the accused. We will present to you what the accused had to say about what happened; and gentlemen, you will learn that this is not a case of he said, she said." Record at 365. In concluding his opening statement, the trial counsel stated that the other evidence in the case, although tending to show the appellant was guilty, was "all fluff" and that "the meat and potatoes in this case are what [M] says and what the accused says...." Record at 365.

A redacted copy of the appellant's testimony at his original trial was entered into evidence as Prosecution Exhibit 4. Over defense objection, Prosecution Exhibit 4 was published in written form to the members, and the members were allowed to take the exhibit with them into the deliberation room. The appellant did not testify in his own defense on the merits. During argument, trial counsel reiterated the importance of the appellant's former testimony as follows:

> As I said, you've got two important pieces of evidence in this case. Besides the testimony of [M], you have the statement of the accused as to what happened. I want to once again take you back to voir dire. At the very beginning of defense counsel's voir dire, she stood up here, and she asked every member of the panel, have you ever been accused wrongly? Have you ever been accused of something you didn't do? And everybody in the panel put their hand in the air—either right away something immediately came to mind, or after a moment or two of thought—the hands went up. Every single member put their hand in the air, and Colonel Siegel was extremely meticulous in going down to each panel member and asking them what their reactions were when they were wrongly accused.
>
> And do you remember what virtually everybody said? Anger. Where is the anger? Where's even a shred of righteous indignation here in what the accused has to say happened? He's not wrongly accused; this is a pedophile. This is a child molester rationalizing to himself and to the body before which he was testifying for what he had done. Rationalizing away his actions, it was a dream. I was working hours and hours and hours, and I don't know; I don't know if it happened.

Record at 818.

Trial counsel again commented on Prosecution Exhibit 4 in his final argument as follows:

> In Prosecution Exhibit 4, the accused says, "When I was approached by the investigator, and he started talking to me about this, I thought that was a dream." When asked to clarify his answers, "No, not in my recollection." "What did you mean by that? Did you mean that if you searched back through your memory, the answer is no?" Like Colonel Siegel characterizes it? He's given an opportunity to clarify that answer, "No, not in my recollection." "So does that mean that you could have done this; that you could have done both of

trial Article 39(a), UCMJ, session conducted in 1990, that there was no ineffective assistance of counsel in the decision to have the appellant take the stand and his own review of the subsequent appellate litigation in which he found that the original military judge's decision had not "been in any way disapproved, disagreed with or overturned by any of the appellate authorities." Record at 136–37, 155–157.

them, the rape and the indecent acts?" If you look at the exhibit, he says, "I don't know."

This is a criminal who did the crimes he is charged with, and it's a child molester who did the child molest, and he's rationalizing in his own mind, and to the person he's talking to about how that could possibly have come about. That's what Prosecution Exhibit 4 is all about, and that's the determination you'll come to when you consider this in light of the other testimony in this case.

Record at 844–45. Later in his final argument the trial counsel stated:

There are two important pieces of evidence in this case, what [M] told you, and what the accused had to say about it. In your search for the truth I don't ask you to disregard everything else that happened in this trial; I ask you to consider it all. The rest of it is interesting, and most of it points to the accused as guilty, just like the two important pieces of evidence in this case do.

Record at 847.

On 12 April 1996, the members entered findings of guilty of the lesser included offense of attempted carnal knowledge and of indecent liberties with a child, in violation of Articles 80 and 134, UCMJ. After the sentencing hearing, the members sentenced the appellant to a dishonorable discharge, five years confinement, total forfeitures, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged on 16 July 1997. The record is once again before us for review.

Having carefully reviewed the record of trial, the appellant's assignments of error, and the Government's response, we find merit in the appellant's first and second assignments of error [6] and conclude that error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ. We provide relief in our decretal paragraph.

### Use of the Appellant's Prior Testimony

██ "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.'" *Rock v. Arkansas,* 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)(quoting *Faretta v. California,* 422 U.S. 806, 819, n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). *See United States v. West,* 27 M.J. 223 (C.M.A.1988)(holding that constitutional due process considerations enter trial when evidentiary rule infringes impermissibly on right of defendant to testify). The decision whether to testify belongs to the accused. Standards for Criminal Justice § 4–5.2 (2d edition 1980); *United States v. Jones,* 14 M.J. 700, 702 (N.M.C.M.R.1982). The exercise of the right to testify requires a tactical decision to be resolved between an accused and trial defense counsel. *See United States v. Pennycooke,* 65 F.3d 9, 11 (3d Cir.1995)(holding that determination of whether defendant will testify is an important part of trial strategy best left to defendant and counsel without the intrusion of trial court, as that intrusion may have unintended effect of swaying defendant one way or the other.)

"When an accused testifies voluntarily as a witness, the accused thereby waives the privilege against self-incrimination with respect to the matters concerning which he or she so testifies." Mil.R.Evid. 301(e), Manual for Courts-Martial, United States (1984 ed.). *See Harrison v. United States,* 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968)(holding that defendant who chooses to testify waives privilege against compulsory self-incrimination with respect to the testimony and that waiver no less effective or complete because defendant motivated to take witness stand in first place only by reason of strength of lawful evidence).

In *Harrison,* the accused elected to testify after the Government introduced into evidence three confessions. On appeal, it was determined that the confessions were obtained illegally and should have been sup-

---

6. The appellant asserted 10 assignments of error. Given our resolution of the first and second assignments of error, we need not discuss the other eight.

pressed. The Court of Appeals for the D.C. Circuit ruled, however, that the petitioner's prior testimony could be used against him at his new trial without regard to the confessions that had been introduced in evidence before he testified, since the accused had "made a conscious tactical decision to seek acquittal by taking the stand after [his] in-custody statements had been let in." *Harrison v. United States*, 387 F.2d 203, 210 (D.C.Cir.1967). The Supreme Court overturned that decision, noting that the "question is not *whether* the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." *Harrison*, 392 U.S. at 223, 88 S.Ct. 2008 (emphasis in original).

The military judge at the appellant's second trial found that "there was no evidence of any ineffective assistance of counsel as to the decision of the accused to take the stand and testify; and, in fact, whatever ineffective assistance Mr. Edmunds may have been guilty of in that particular case really had nothing to do with the initial decision to have the accused take the stand and testify." Record at 137. We disagree and are convinced that the appellant testified as a direct consequence of the ineffective assistance provided to him by his civilian counsel. We agree with the military judge at the appellant's original trial who, in his findings of fact related to the post-trial motion for a mistrial, observed:

> I find that there was no doubt between the two that Master Sergeant Murray was going to testify, and, indeed, the testimony of Master Sergeant Murray was a necessary predicate for the testimony of Dr. Lightner.[7] Dr. Lightner was prepared to come to trial and to testify and offer opinions as to the facts as evidenced by the testimony of Master Sergeant Murray.
>
> I specifically find that Mr. Edmunds—I believe that Mr. Edmunds, when he called

Master Sergeant Murray, knew full well that Master Sergeant Murray was not going to unequivocally deny, but, indeed, was going to equivocate. That was the theory of the case in my opinion. Whether or not Master Sergeant Murray ever had it—well, whether or not it was an express verbal agreement between the two or understanding or whether it was unspoken, I find that Mr. Edmunds, and I am focusing it upon him now, had no doubts and understood that Master Sergeant Murray was to testify to tell the story. And again, that story was known to the defense team; that story was the basis for the consultation and the referral to Dr. Lightner and the use of Dr. Lightner's testimony at trial.

Original Record at 484.

In essence, the testimony of the appellant was the foundation for a defense that CAAF found was not a legal defense to the most serious charge (rape); was poorly presented; neither tested nor attacked the Government evidence; did not represent an affirmative defense; and, resulted in a total breakdown of the adversarial process. *Murray*, 42 M.J. at 178. Under these circumstances, we find that the appellant did not voluntarily testify at his first trial and thus did not effectively waive his right against self-incrimination. MIL.R.EVID. 310(e).

Additionally, although there was no illegally obtained evidence introduced by the Government which precipitated the appellant's testimony, that testimony was the direct result of the denial of the appellant's Sixth Amendment right to the effective assistance of counsel. Allowing the Government to use that testimony on the merits, brought the taint of the constitutional error of the first trial into the second trial. In *Harrison*, the Supreme Court found that "[t]he exclusion of an illegally procured confession and of any testimony obtained in its wake deprive[d] the Government of nothing to which it ha[d] any lawful claim and create[d] no impediment to legitimate methods of investigating and prosecuting crime [and] ... no more than restore[d] the situation that would have pre-

---

7. Dr. Lightner was the defense expert witness who testified as to the effects of sleep deprivation.

vailed if the Government had itself obeyed the law." *Harrison*, 392 U.S. at 224, 88 S.Ct. 2008. We find that the exclusion of testimony obtained in the wake of the denial of an individual's Sixth Amendment right to the effective assistance of counsel deprives the Government of nothing to which it has any lawful claim and creates no impediment to legitimate methods of investigating and prosecuting crime, and no more than restores the situation that would have prevailed if the appellant had not been so denied.[8]

■ Thus, we conclude that the military judge erred in admitting the prior testimony of the appellant on the merits.[9] This error was compounded by the publication of the testimony in written form and allowing the members to take the testimony with them into the deliberation room.[10] Applying the test established in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), to this "federal constitutional error," we are unable "to declare a belief that it was harmless beyond a reasonable doubt." The interests of justice require that the findings be reversed because the introduction of the

appellant's former testimony materially prejudiced the appellant's right to a fair trial.

### Conclusion

Accordingly, we set aside the findings and sentence. The record of trial is returned to the Judge Advocate General. A rehearing may be ordered.

Chief Judge DeCICCO and Judge ANDERSON concur.

---

8. In *People v. Duncan*, 173 Ill.App.3d 554, 123 Ill.Dec. 422, 527 N.E.2d 1060, 1062 (1988), the Third District Appellate Court of Illinois held that the principles set out in *Harrison* applied in a case where the accused was denied the effective assistance of counsel at his first trial due to a conflict of interest. That court ruled that the accused's testimony at his first trial could be used for impeachment only.

9. Considering the admissibility of the former testimony of witnesses given at a prior trial, at which it was subsequently determined the accused had been denied the effective assistance of counsel, the Air Force Court of Military Review wrote: "[B]efore testimony taken at a prior trial can be used, there is a requirement the accused be adequately represented at the former trial." *United States v. Vanderpool*, 15 C.M.R. 609 (A.F.B.R.1954). On certification of a similar issue by The Judge Advocate General of the Air

Force to the Court of Military Appeals, Judge Brosman, wrote:

> It would be inconsistent for us to agree that the accused was somehow denied adequate legal representation at the first trial and yet hold the testimony given at that proceeding to be admissible to ground a conviction at the second over the objection of the accused. On the contrary, we think that there is no logical escape from the conclusion that the former testimony ... was inadmissible, and that the objection by the defense to its introduction would have been well taken.

*United States v. Mansfield*, 33 M.J. 972, 989–90 (A.F.C.M.R.1991)(citing *United States v. Vanderpool*, 16 C.M.R. 135, 141, 1954 WL 2434 (C.M.A. 1954), *aff'd*, 38 M.J. 415 (1993)).

10. This was the appellant's second assignment of error, which the Government conceded, citing *United States v. Austin*, 35 M.J. 271 (C.M.A.1992).