# United States Navy–Marine Corps Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellant*

**v.**

**Adam M. PYRON**
Master at Arms Second Class (E-5), U.S. Navy
*Appellee*

**No. 201900296R**

_____

Decided: 15 July 2022

Appeal by the United States Pursuant to Article 62, UCMJ

Military Judge:
Ryan J. Stormer

Arraignment: 21 September 2021 before a general court-martial convened at Naval Base San Diego, California.

For Appellant:
*Lieutenant John L. Flynn IV, JAGC, USN*
*Major Kerry E. Friedewald, USMC*

For Appellee:
*Lieutenant Megan E. Horst, JAGC, USN*

Judge DEERWESTER delivered the opinion of the Court, in which
Chief Judge MONAHAN and Senior Judge STEPHENS joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

DEERWESTER, Judge:

Appellee's case is before us for a second time. In 2019, a general court-martial consisting of members with enlisted representation convicted Appellee, contrary to his pleas, of attempted rape of a child, rape of a child, and sexual abuse of a child, in violation of Articles 80 & 120b, Uniform Code of Military Justice [UCMJ].[1] In 2021, this Court reversed Appellee's convictions and authorized a retrial owing to implied bias of one of the members.[2] In July 2021, the convening authority re-referred the same charges and specifications against Appellee to a general court-martial.[3]

The Government now appeals the following issue pursuant to Article 62(a)(1)(B), UCMJ: Did the military judge abuse his discretion by excluding Appellee's testimony during his first court-martial due to Government actions in the member selection process where: (a) this Court found the trial counsel's recitation of voir dire answers was "an honest mistake," and (b) under *Harrison v. United States*[4] and *United States v. Murray*,[5] suppression is only justified where illegal government action directly induced the accused's testimony? We find that the military judge abused his discretion and reverse his decision.[6]

---

[1] 10 U.S.C. §§ 880, 920b.

[2] *United States v. Pyron*, 81 M.J. 637 (N-M. Ct. Crim. App. 2021) [*Pyron I*].

[3] Citations to the record from Appellee's first court-martial, *Pyron I*, are denoted as "R." and citations to the record from the rehearing are denoted as "RR." Citations to the Prosecution Exhibits and Appellate Exhibits from the first court-martial are "Pros. Ex." and "Appellate Ex." Citations to the rehearing Prosecution Exhibits and Appellate Exhibits are "R. Pros. Ex." and "R. Appellate Ex."

[4] *Harrison* v. *United States*, 329 U.S. 219 (1968).

[5] *United States v. Murray*, 52 M.J. 671 (N-M. Ct. Crim. App. 2000).

[6] Appellee argues the Government failed to meet its burden to establish jurisdiction under Article 62(a)(1)(B), UCMJ. To establish Article 62 jurisdiction, we must assess

## I. BACKGROUND

Appellee was convicted at his first court-martial of attempted rape of a child, rape of a child, and sexual abuse of a child for conduct alleged to have occurred in 2019 while Appellee was stationed in Yokosuka, Japan. In February, Appellee spent the day watching the Super Bowl at a family friend's home. His friend, a civilian Navy employee, lived in off-base housing with his wife, two sons, 16-year old step-daughter, and two daughters: an 8-year-old and a 6-year-old. A panel composed of officer and enlisted members found Appellee guilty at his first court-martial of conduct which we summarized in our prior opinion:

> That evening, after the parents had retired for the night to their bedroom, [Appellee] brought both the 8- and 6-year-old girls downstairs, and while there, exposed his penis to both of them and rubbed his penis on the 8-year-old's leg. After the 8-year-old ran back upstairs to bed, [Appellee] placed his penis into the mouth of the 6-year-old and asked her to remove her pull-up diaper so that he could cause contact between her vulva and his mouth. After the 6-year-old returned to her bedroom, he followed her there to ask her to place her mouth on his penis again. When she refused, [Appellee] went back downstairs for the evening.[7]

During voir dire at Appellee's first court-martial, his trial defense counsel [TDC] questioned multiple members who had children similar in age to the named victims. During individual voir dire, one of the members, Lieutenant [LT] Alpha,[8] stated that he thought of his two young daughters when he read

---

(1) whether evidence was excluded, and; (2) whether the evidence is substantial proof of a material fact. *United States v. Jacobsen*, 77 M.J. 81, 85 (C.A.A.F. 2017). Evidence constitutes substantial proof of a material fact if "a reasonable trier of fact could find the evidence persuasive in establishing the proposition for which the government seeks to admit it." *United States v. Adrian*, 978 F. 2d 486, 491 (9th Cir. 1992), *overruled by United States v. Grace*, 526 F.3d 499, 502 (9th Cir. 1992) (establishing that certification by a civilian court is alone sufficient to establish jurisdiction). We find that the Government has met its burden and that a reasonable trier of fact could find the excluded evidence persuasive in establishing the proposition for which the Government offered it.

[7] *Pryon I*, 81 M.J. at 637.

[8] All names in this opinion, other than those of Appellee, the judges, and counsel, are pseudonyms.

the charges against Appellee and admitted he would have difficulty not thinking of them when hearing the testimony from the victims.

At the end of voir dire, TDC challenged LT Alpha for cause. During argument on the challenge, the trial counsel [TC] incorrectly asserted that a rehabilitation colloquy had been conducted with LT Alpha. In reality, no such rehabilitation colloquy occurred—neither the TC nor the military judge counseled LT Alpha, nor did either ask any further questions of LT Alpha after his responses. In our prior opinion, this Court found that the military judge adopted the TC's "incorrect assertions and based his denial of the challenge upon them."[9] Although we found that the TC made "an honest mistake"[10] and did not "intentionally mislead the military judge,"[11] we set aside the findings and sentence, holding that the military judge abused his discretion by failing to grant Appellee's implied bias challenge.[12]

On remand, the Government re-referred the same charges against Appellee and sought to pre-admit Appellee's testimony from his first court-martial under Mil. R. Evid. 801(d)(2). The Government cited to *Harrison v. United States* and Mil. R. Evid. 801(d)(2) for the proposition that the prior testimony was a statement of a party opponent and that "an accused's testimony from a former trial is admissible in evidence against the accused at a later proceeding." The Government argued that by choosing to testify at his first court-martial, Appellee "waive[d] his privilege against compulsory self-incrimination … and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence against him" so long as the testimony had not been induced by illegally obtained evidence.[13]

---

[9] *Pyron I*, 81 M.J. at 645.

[10] *Id*. at 645 n.47.

[11] *Id*.

[12] *Id*. at 645 ("Due to the lack of additional questioning to clarify and provide instructional guidance on the issue, an objective member of the public cannot be confident LT Alpha was able to do what he himself said was 'hard' to do. We decline to guess whether LT Alpha was able to focus on the evidence and not his daughters during [Appellee's] case, as such speculation flies in the face of the liberal grant mandate.").

[13] R. App. Ex. XVII at 4 (citing *Harrison*, 392 U.S. at 222).

In support of its motion, and in order to meet its burden to demonstrate by a preponderance of the evidence that Appellee's prior testimony was not induced by illegal action on the part of the Government,[14] the Government enclosed with its motion a transcript of Appellee's pre-trial interview with Naval Criminal Investigative Service [NCIS], a search and seizure authorization, the trial and appellate exhibits from Appellee's first court-martial, and a copy of this Court's opinion in *Pyron I* for consideration by the military judge. Included in the filing was evidence introduced in the prior court-martial: (1) that the named victims made an immediate outcry which their mother reported to the police immediately; (2) testimony from the 8-year-old that Appellee rubbed his penis on her leg and asked her to perform oral sex; (3) testimony from the 6-year-old that Appellee made her perform oral sex; (4) law enforcement testimony establishing chain of custody over DNA evidence; (5) the victims' prior forensic interviews which were entered as prior consistent statements; (6) testimony from a forensic DNA examiner that she found DNA, likely from a body fluid like saliva or vaginal secretions, consistent with the 6-year-old victim on Appellee's penile, pubic mound, and scrotum swabs; (7) and Appellee's trial testimony.[15]

In addition, the Government provided to the military judge the transcript from Appellee's NCIS interview where he consented to the collection of his DNA after making several admissions, including that: he placed his penis inside the 6-year-old's mouth after asking her if she "wanted to taste it;" he asked the 6-year-old if he could perform oral sex on her; he touched his penis against the 8-year-old's leg; and, that he believed the children were between the ages of 3- and 5-years old.[16]

At his first trial, Appellee took the stand in his own defense. He stated that he was "[p]retty drunk" and did not remember doing what the accusations alleged.[17] After he was confronted with the existence of DNA evidence and testimony from the named victims, Appellee stated that he lied to NCIS.[18] Appellee testified that he remembered "waking up to a hand on my penis … Like my boxers are pulled down and then I look over and I see … two smaller fingers

---

[14] Rules for Court-Martial [R.C.M.] 905(c).

[15] *See* R. App. Ex. XVII at 1-8, encl. 1-4.

[16] R. App. Ex. XVII at 3; R. App. Ex. XVII, encl. 1.

[17] R. at 829.

[18] R. at 831-33.

and I … push that away and … I'm trying to push my penis down and I say no and roll over."[19] Appellee explained that he did not tell this to NCIS because it "wasn't the same as everything they were saying,"[20] and he had no memory of it during his interrogation.[21] Appellee explained that he sent incriminating text messages to his wife because he "was so convinced that [he] was a child rapist."[22] Appellee stated that went to sleep wearing pants with a belt and that for a hand to get to his penis, his belt would have to be unbuckled, his pants unbuttoned and unzipped.[23] Appellee also testified that the victims reached into his boxers and pulled out his penis while he was sleeping.[24]

At his second trial, Appellee opposed a Government motion to admit his testimony from his first trial, arguing that the Government failed to meet its burden to show that the prior testimony was not induced by the illegality of the first trial—referring to the structural error resulting from the military judge's failure to grant the implied bias challenge which was the subject of this Court's prior opinion.[25] After consideration of "all legal and competent evidence presented by the parties, the parties' asserted facts, all reasonable inferences to be drawn from the evidence, allied papers and documents, and after ha[ving] resolved any issues of credibility,"[26] the military judge found:

> [T]he government has not shown their actions from the first trial did not induce the accused's testimony in his first trial in July 2019. In its opinion, the NMCCA made it very clear that the error they found in the accused's case was due in large part to the government's error in asserting inaccurate facts about a member during the voir dire process. The government's inaccurate recitations of the facts then led the trial judge to make inaccurate findings of fact – which resulted in the error NMCCA found in the case. There is no evidence the government's error was done with malice or done intentionally, however, it was, at the very

[19] R. at 834.

[20] R. at 835-36.

[21] R. at 835.

[22] R. at 836.

[23] R. at 854-55.

[24] R. at 855-856.

[25] App. Ex. XLV, at 4.

[26] App. Ex. LV, at 1.

least, grossly negligent and was highly prejudicial to the accused. The defense has provided some evidence to the Court that the accused did testify at this first trial due in some part to the error that led NMCCA to conclude that his first trial was unfair. And, while the government's error may not rise to the level of "illegal action" articulated in *Harrison*, the Court finds the government should not benefit from their error in the accused's first trial by getting to introduce his testimony from his first trial at his second trial.

The government's error during the accused's first trial highly contributed to NMCCA declaring his first trial unfair. Because of this, the Court finds that NMCCA's rationale in *Murray* also applies to this case, and that the introduction of the accused's prior testimony in this case under M.R.E. 801(d)(2) would bring the "taint" of the first trial into the second.[27]

## II. DISCUSSION

### 1. Standard of Review and the Law

"In an Article 62, UCMJ, appeal, this Court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial," which in this case is Appellee.[28] "A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard."[29] Whether a military judge abuses his discretion is "far more than a difference of opinion,"[30] and occurs only where his findings are "clearly erroneous or if his decision is influenced by an erroneous view of the law."[31] In our review, we are bound by the military judge's factual determinations "unless they are unsupported by the record or clearly erroneous."[32] The

---

[27] *Id.* at 3-4.

[28] *United States v. Becker*, 81 M.J. 483, 488 (C.A.A.F. 2021).

[29] *United States v. Michael*, 66 M.J. 78, 80 (C.A.A.F. 2008); *see also United States v. Czachorowski*, 66 M.J. 432, 434 (C.A.A.F. 2008) (evidentiary rulings on hearsay are reviewed for abuse of discretion).

[30] *United States v. Mosley*, 42 M.J. 300, 303 (C.A.A.F. 1995).

[31] *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004).

[32] *Becker*, 81 M.J. at 489.

abuse of discretion standard "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range."[33]

In *Harrison*, the Supreme Court promulgated the general evidentiary rule that a criminal defendant's testimony from a prior trial is admissible in evidence against him at a later proceeding.[34]

> A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him.[35]

This general principle is not a bright-line rule, however. Where a defendant's prior testimony was induced after the prosecution put into evidence confessions or admissions that were illegally obtained, the testimony becomes the fruit of the proverbial poisonous tree and cannot be used against the accused at later proceedings.[36]

In *Harrison*, the petitioner was convicted in his initial criminal trial after the government introduced three confessions and the petitioner took the stand to testify in response to his prior admissions.[37] On appeal, the reviewing court found that all three confessions had been illegally obtained by law enforcement and were thus inadmissible against the petitioner.[38] On rehearing, the prosecution read the petitioner's prior testimony from his first trial to the jury and he was again convicted."[39] While it was true that the petitioner "waive[d] his

---

[33] *Gore*, 60 M.J. at 187 (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)).

[34] *Harrison*, 392 U.S. at 222.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 220.

[38] *Id.* at 222 ("…the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby -- the fruit of the poisonous tree, to invoke a time-worn metaphor.").

[39] *Id.* at 221.

privilege against compulsory self-incrimination with respect"[40] to his prior testimony, the Supreme Court observed that "[t]he question is not whether the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of confessions illegally obtained … then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible."[41] Accordingly, the burden is placed on the government, by a preponderance of the evidence, to show that its illegal actions did not induce the testimony of the criminal defendant.[42]

In the decades since *Harrison*, some jurisdictions, including our own,[43] have expanded the logic of *Harrison* to other due process concerns, namely cases in which ineffective assistance of counsel directly results in an accused's testimony. In *Murray*, this Court reversed a military judge's decision to allow the admission of prior trial testimony in the appellant's court-martial.[44] There, at his initial trial the appellant had expressed to his civilian defense counsel that he wished to take the stand and testify in his own defense denying the allegations of rape he was charged with having committed.[45] Instead, at the behest of his civilian defense counsel, he took the stand and testified consistent with a purported legal defense based on a claim of sleep deprivation.[46] We found that the appellant was prejudiced by ineffective assistance of counsel, and that the suggested testimony contributed to a defense that was "not a legal defense."[47] We reasoned that allowing the government to introduce testimony

---

[40] *Id.* at 222.

[41] *Id.* at 223.

[42] *See id.* at 225. Both the Fifth and Tenth Circuits have recognized that *Harrison* does not preclude the use of prior testimony where that testimony was compelled by improperly *admitted* evidence, but rather only evidence that was improperly *obtained*. *See Guidry v. Lumpkin*, 2 F.4th 472, 483 (5th Cir. 2021) (citing *Littlejohn v. Trammell*, 704 F.3d 817, 849 (10th Cir. 2013)).

[43] *Murray*, 52 M.J. at 675 (excluding appellant's prior testimony from trial where ineffective assistance of counsel led appellant to take the stand and testify to establish a defense which "CAAF found was not a legal defense"); *see also Rolon v. State*, 72 So. 3d 238, 242 (Fla. Dist. Ct. App. 2011) (citing *Murray*, 52 M.J. at 672); *People v. Duncan*, 527 N.E.2d 1060 (Ill. App. 1988).

[44] *Murray*, 52 M.J. at 675.

[45] *Id.* at 671.

[46] *Id.* at 675.

[47] *Id.* at 676.

which "was the direct result of the denial of the appellant's Sixth Amendment right to effective assistance of counsel . . . brought the taint of the constitutional error of the first trial into the second trial."[48]

*2. The Military Judge Abused His Discretion by Excluding Appellee's Testimony from the Prior Trial*

Based upon our review of the record, the filings by the parties, and the relevant case law, we find that the military judge abused his discretion by denying the Government's motion to admit Appellee's testimony from his prior court-martial. Even viewing the evidence in the light most favorable to Appellee, we find that the military judge made conclusions of law which fell outside the "range of choices"[49] available to him.

a. The Decision Was Based on an Erroneous View of the Law

In his ruling, the military judge determined that the Government failed to meet its burden to establish that its own "actions from the first trial did not induce [Appellee's] testimony in the first trial."[50] The military judge also found that the Defense had "provided some evidence to the Court that the accused did testify at his first trial due in some part to this error that led NMCCA to conclude that his first trial was unfair."[51] In reaching his conclusion, the military judge expanded the holding of *Harrison* to the facts of Appellee's case, noting that while the Government's error in asserting inaccurate facts about LT Alpha during the voir dire process did not "rise to the level of 'illegal action,'" the Government should not benefit from the error in the accused's first trial.[52] In so doing, the military judge applied the rationale of *Murray* to the

---

[48] *Murray*, 52 M.J. at 675. (citing *Harrison*, 392 U.S. at 224 ("The exclusion of an illegally procured confession and of any testimony obtained in its wake deprived the Government of nothing to which it had any lawful claim and created no impediment to legitimate methods of investigating and prosecuting crime [and] ... no more than restored the situation that would have prevailed if the Government had itself obeyed the law.")).

[49] *Gore*, 60 M.J. at 187 (citing *Wallace*, 964 F.2d at 1217 n.3).

[50] R. App. Ex. LV at 3.

[51] *Id.*

[52] *Id.*

introduction of Appellee's prior testimony, ruling that the introduction of the prior statements would "bring the 'taint' of the first trial into the second."[53]

As a preliminary matter, we find no support in the record or filings before us for the proposition that Appellee has presented evidence indicating that his decision to testify arose from the inclusion of LT Alpha as a member in his original court-martial. Rather, the evidence introduced in Appellee's first trial by the Government, and attached to the record before us now, is sufficient to meet its burden of demonstrating that Appellee did not testify at his first trial due to the error in the member selection process. Accordingly, we find Appellee testified "in the first place only by reason of the strength of the lawful evidence against him"[54] – specifically, Appellee's prior admissions that were tantamount to confessions and corroborative victim testimony and DNA evidence.

Unlike the petitioner in *Harrison*, none of this evidence introduced by the Government in Appellee's first trial was illegally obtained. To the contrary, this Court's sole basis for setting aside and dismissing the findings and sentence in Appellee's prior trial was an error in the member selection process.[55] Under *Harrison*, in order for a criminal defendant's prior testimony to be excluded in a subsequent proceeding, *it is a requirement* that the accused have testified in order to "overcome the impact of confessions illegally obtained."[56] Appellee's confessions to NCIS admitted into evidence in his first trial were not illegally obtained.

As the military judge recognized, the actions of the Government related to the member selection process did not rise to the level of illegal government action, nor did those actions relate in any meaningful way to the legality of Appellee's admissions to NCIS. While the standard of review may be the same, we are unwilling to equate a military judge's error in the member selection process with the erroneous admission of evidence illegally obtained by government agents. There are different public policy interests at stake. *Harrison* is

---

[53] *Id.*

[54] *Harrison*, 392 U.S. at 222.

[55] *Pyron I*, 81 M.J. at 645.

[56] *Harrison*, 392 U.S. at 223. Our prior holding in *Murray* stands only for the proposition that the logic of *Harrison* may be expanded to instances where ineffective assistance of counsel *directly* results in the criminal defendant's testimony. *Murray*, 52 M.J. at 675.

ultimately a prohibition against (re)trials being tainted by the illegal actions of government agents, not the good-faith mistakes of trial judges.[57]

Accordingly, we find the military judge's application of *Harrison* to the circumstances of Appellee's prior testimony to be clearly erroneous. Even if reliable evidence were presented that Appellee testified as a result of the inclusion of LT Alpha on the member panel, the military judge abused his discretion in applying this Court's decision in *Murray* to exclude Appellee's prior testimony. *Murray* stands for the proposition that the Government should not benefit on rehearing from testimony that was the direct result of the denial of the accused's right to effective assistance of counsel.[58] We do not construe that decision to authorize the extension of *Harrison*'s exclusionary rule to an *error* (vice *illegal activity*) during the voir dire process. Because the Government met its burden in demonstrating by a preponderance of the evidence that Appellee did not testify at his initial court-martial due to any illegal action on the part of the Government, we find that the military judge abused his discretion in denying Appellant's motion to admit Appellee's prior testimony into evidence.

### III. CONCLUSION

The ruling of the military judge is **VACATED** and the case is **REMANDED** for further proceedings not inconsistent with this opinion.

Chief Judge MONAHAN and Senior Judge STEPHENS concur.

---

[57] Moreover, although the TC was mistaken when he asserted to the military judge in Appellee's first trial that LT Alpha had been rehabilitated, we previously opined that this blunder was an "honest mistake." *Pyron I*, 81 M.J. at 645 n.47. To the extent that the military judge for Appellee's rehearing found that the TC's actions were, "at the very least, grossly negligent," App. Ex. LV, at 3, we find that finding of fact to be clearly erroneous. Indeed, based on the circumstances, including the large venire consisting of 14 members and the length of time it took to conduct general and individual voir dire, we find TC's misstep was the product of simple negligence.

[58] *Murray*, 52 M.J. at 675.

FOR THE COURT:

J. TRAVIS WILLIAMSON
Acting Clerk of Court